ANN MERRETT, ADMINISTRATRIX, ETC., v. THE PREFERRED
MASONIC MUTUAL ACCIDENT ASSOCIATION
OF AMERICA.

*Accident insurance—Cause of death—Burden of proof.*

The burden of proving accidental death in a suit upon an accident
insurance policy is upon the plaintiff, and until some proof is
offered tending to establish one of several equally reasonable
theories, some consistent with the theory of accidental death,
and some inconsistent with it, a case is not made out.

Error to Lenawee. (Lane, J.) Submitted on briefs
November 23, 1893. Decided January 5, 1894.

*Assumpsit.* Defendant brings error. Reversed, and no
new trial ordered. The facts are stated in the opinion.

*Frank T. Lodge,* for appellant, contended:

1. Accidental death can never be presumed. An accident is some-
thing that is unforeseen, unexpected, and unnatural, and
cannot be presumed to have occurred until the fact of its
occurrence has been clearly proven. In the absence of proof
to the contrary, it is to be presumed that one who has died
has come to his death from natural causes, and the burden of
overcoming this presumption is upon him who asserts to the
contrary; citing 19 Amer. & Eng. Enc. Law, 74 (note); and it
was the duty of the court to call the attention of the jury to
this presumption; citing *Jenkins v. Harvey,* 1 C. M. & R. 877;
Best, Ev. § 326.

*Wood & Bird,* for plaintiff, contended:

1. A *prima facie* case of death by accident was made out by proof
that the assured was found dead in the outhouse, where he
had recently gone, with this contusion on his right temple,
which had been recently inflicted, and was sufficient to cause
death, and probably did cause death, and that there was no
other apparent cause of death; citing *Mallory v. Insurance Co.,*
47 N. Y. 52; *Insurance Co. v. McConkey,* 127 U. S. 661; *Free-
man v. Insurance Co.,* 144 Mass. 572; *Coburn v. Insurance*

*Co.*, 145 Id. 226; *Peck v. Association*, 52 Hun, 255; *Cronkhite v. Insurance Co.*, 75 Wis. 116.

HOOKER, J.    Deceased, a painter, employing men, got up early to commence a job.    While his wife was preparing breakfast, he went to the privy, where he was soon after found dead, upon the floor, by his wife, who testifies that she found a rope about three feet long, with a knot in it, the knot being under his neck.    Other testimony showed that the neck was bruised or discolored, and there was a three-cornered bruise upon the right temple.    A brick was kept in the privy, which was there at the time, to keep the door shut.    The door was shut when he was found. Some witnesses testified that there was a discolored ring around his neck.    Others did not see this.    The privy was eight or ten rods from the house, and there was no evidence that any other person was seen upon the premises.    Evidence was offered showing that a short time previous he had been struck over the eye by a person who used brass knuckles, by which blow he was seriously injured.    Witnesses differed as to which side of the face this injury was upon.    An autopsy showed ecchymosis of the brain.    There appears to have been no investigation of other organs than the brain.    The size of the privy was 6 by 5 feet, and the distance from seat to door was 22 inches.

Plaintiff's theory seems to be that the blow upon the temple caused death.    If this be accepted as true, we must then look for the cause of the blow.    Among the possible theories are the following:

1. That some person struck him.
2. That he struck himself with the brick, with suicidal intent.
3. That he fell upon the brick (a) after hanging himself; (b) by falling in a faint; (c) by falling in a fit of apoplexy; (d) by falling from heart failure.

While these are all within the bounds of reasonable con-

jecture, there is but little evidence in the case to justify a jury in deciding which was the cause. What there is favors the theory that he attempted his own life by strangulation, or by striking himself with the brick, or both, and perhaps falling upon the brick. Of a half dozen or more possible theories, the jury have found one inconsistent with what little evidence there is, and based a verdict upon it. Until there was some evidence tending to show that death resulted from accident, rather than from design or natural causes, such as apoplexy or heart failure, there was nothing to go to a jury. There was not a *prima facie* case of accidental death. The burden of proving accidental death is upon the plaintiff. Until some proof is offered tending to establish one of several equally reasonable theories, some consistent with the theory of accidental death, and some inconsistent with it, a case is not made out.

As this disposes of the case, other questions need not be discussed.

The judgment must be reversed, and no new trial ordered.

The other Justices concurred.