# Taylor v. General Accident Assurance Corporation, Limited, Appellant.

*Insurance—Accident insurance—Death from fall—Evidence.*

In an action upon a policy of accident insurance it appeared that the policy provided for damages for death "caused solely and exclusively by external, violent and accidental means," and not "directly or indirectly from disease in any form either as cause or effect." The insured, a man about fifth-eight years of age, was observed on a moonlight night to be mounting four sandstone steps with a rubber mat lying upon the top one, at the entrance to his office. As he reached the top step he was seen to fall. Immediately afterward he was found lying at the bottom of the steps severely injured, but not unconscious. In answer to a question he said he did not know how he came to fall. With assistance he walked to his house 375 feet away. Hemorrhages from his stomach due to rupture of blood vessels resulting from the fall ensued, and the insured died within four days from the accdient. Medical testimony was to the effect that there was nothing in the insured's condition indicating that he was afflicted with any disorder that might have contributed to the fall, or to his death. *Held,* (1) that the evidence was sufficient to sustain a finding that the fall was accidental; and (2) that a verdict and judgment for plaintiff should be sustained.

Argued Feb. 29, 1904. Appeal, No. 12, Jan. T., 1904, by defendant, from judgment of C. P. Berks Co., June T., 1903, No. 24, on verdict for plaintiff in case of Sarah J. Taylor v. General Accident Assurance Corporation, Limited, of Perth, Scotland. Before FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Assumpsit upon a policy of accident insurance.

Verdict for plaintiff for $5,211.80, subject to question of law reserved. On a rule for judgment for defendant non obstante veredicto, ENDLICH, J., filed the following opinion :

The policy embodying the contract by whose terms the rights and liabilities of the parties are fixed, provides for the payment of $5,000 to the widow of the insured upon his death " from injuries which are the direct and proximate result of, and caused solely and exclusively by external, violent and accidental means," and not " directly or indirectly . . . . from disease in any form either as cause or effect." The plaintiff, asserting

a liability upon defendant to pay the indemnity, assumed the burden of proving every element needful to establish it. Necessarily, this involved a showing not only that the deceased fell and died from the effects of the fall, but also that his fall was accidental and not the result of disease in any form. There can be here no doubt as to the fact of the fall or of its fatal consequences; but as to the cause of it (which becomes the material inquiry) there is, as laid down in Keefer v. Pacific Mut. Life Ins. Co., 201 Pa. 448, at p. 455, " no presumption as between disease and accidental cause, within the terms of the policy." Has then the plaintiff, in her testimony, shown that from which the jury might lawfully find that the fall was accidental?

It must be observed, at the outset, that there is no evidence to show just how the fall occurred—whether by tripping, by slipping, by a misstep or sudden turn causing decedent to lose his balance, or by any other specific kind of accident. From a distance of about 150 or 250 feet, on a moonlight night, the deceased was seen mounting the four sandstone steps (a rubber mat lying upon the top one) at the entrance to his office and to fall. Immediately afterwards he was found lying at the bottom of the steps on his left side, his feet towards the steps, his head on the ground, his left arm broken and the left side of his face and head cut and bruised. His office keys were subsequently discovered on the office doorstep. He was not then unconscious, but in answer to a question put to him intimated that he did not know how he came to fall. Assisted by the person who saw him fall and helped him up, he walked to his house, a distance of about 375 feet, and expressing a desire to rest sat down on the porch. There he fainted, whereupon he was carried into the house. When medical aid arrived, within about two hours after the fall, he was " suffering from shock almost to the verge of collapse," and shortly taken with a violent hemorrhage. This hemorrhage, and those occurring subsequently, were due to the rupture of blood vessels in the stomach resulting from the fall, and death ensued within four days from these hemorrhages, together with inflammation of the brain consequent upon concussion sustained in the fall. The medical gentlemen who attended the decedent during the last days of his life, and who were acquainted with him and

had previously ministered to him professionally for insignificant ailments, unite in testifying that there was nothing in his condition indicating that he was afflicted with any disorder that might have contributed to the fall or to his death.

Whilst, in this respect, there is a clear distinction between the present case and Keefer v. Ins. Co., supra, where the "medical testimony was strongly in support of the theory that death resulted from uræmic poison," (p. 455)—it may be that even this distinguishing feature, standing alone, would not be sufficient to meet the burden of proof imposed upon the plaintiff. It may be that, in order to establish the purely accidental character of the fall, the negative showing that, in his condition some hours later as observed by the physicians acquainted to the extent they were with his previous history, there was nothing apparent to which they could ascribe it, does not answer the requirement of affirmative proof of accident. On the other hand, it surely cannot be successfully contended that nothing will answer that requirement save direct proof of the precise means by which the fall was brought about. If that were the rule, no accident could ever be inferentially established, and no accident resulting in immediate death or loss of consciousness could ever become a ground of recovery under a policy like this, unless it happened in the presence of witnesses and in such manner as to impress upon them its exact details. On the contrary, it must be true that the accidental character of a fall may be proved by circumstances—just as any other fact may be so proven ; the test of the sufficiency of the circumstances adduced always being that, viewed as a whole, they reasonably exclude by their preponderating probative weight any other explanation founded in the evidence. See Phila. Trust, etc., Co. v. Phila., etc., R. R. Co., 160 Pa. 590, 594, and Wills, Circ. Evid. pp. 189-190. Nor can it be indispensable that they establish a specific one of a number of accidental causes equally reasonably suggested by the evidence. It must be enough if they fairly exclude design or disease as a cause inferable consistently with the evidence, and thus justify the conclusion that the occurrence is to be referred to the general head of accident. In this sense—where the process of elimination applied under the evidence removes the inference of design or disease and yet the proofs do not single out any particular one

of a variety of fortuitous occurrences capable of accounting for the result consistently with the evidence, i. e., where it is satisfactorily shown that there must have been an accident, but, as among a number of reasonably supposable species of accident, it is unknown which occurred—it is certainly accurate to say, as has been said in Ins. Co. v. Burroughs, 69 Pa. 43, 51, Burkhard v. Ins. Co., 102 Pa. 262, 268, and Hey v. Guarantor's Liability Indemnity Co., 181 Pa. 220, 224, that a case of death or injury proceeding from an unknown cause is a case of accidental death or injury.

Now, here we have the case of a man about fifty-eight years of age, six feet in height and 180 pounds in weight, of moderate habits, attending to his business duties and in normal health and good spirits up to a few moments before his injury, never before afflicted with vertigo or any kindred disorder, and his subsequent condition exhibiting no evidences of any disturbing seizure or affection. He was seen to ascend the steps already described and to fall. The distance from which he was seen and the uncertain light forbade exact observation of details. His position at the bottom of the steps was not that of one suddenly stricken down by disease or helplessly collapsing. His consciousness had not left him, nor his will power ; for he was able to walk to his house. The blood that was upon him came from the cuts he sustained in falling. The hemorrhages came later and were the result of the fall. It may be that all this does not absolutely exclude the possibility of a seizure of some kind as the cause of the fall; but it certainly goes to the extent of reasonably excluding both design and disease as an explanation of the fall founded in the evidence by making it vastly more probable that the cause of it was one of those innumerable accidents which, common experience teaches, may intervene with disastrous effect between the raising of a foot and the putting down of it. Whether the precise thing that happened was that the deceased stubbed his toe against the top step or the mat lying upon it, or slipped, or by a sudden turn lost his balance, or whether several of these contingencies combined to bring him to fall, may be matter of uncertainty. Were it material to determine which it was, the jury could not be permitted to guess at it. But there is no occasion for guessing at it; for so long as the evi-

dence fairly points to one or more of these things as the probable cause of the fall, rather than to an internal disorder—so long as, to quote Merritt v. Preferred Masonic Mut. Acct. Assn. (Mich.), 57 N. W. Rep. 169, relied on by defendant's counsel, there is "some evidence tending to show that death resulted from accident rather than design or natural causes," a prima facie case is made out, and the requirement of affirmative proof of an accident is satisfied. Nor is the inference of accident, supported as it here is, obnoxious to the criticism that it is an inference based upon a mere presumption. Such was the objection to the inference of accidental injury in Keefer v. Ins. Co., supra., in the absence of any direct proof as to the "fact, the cause or the effect" of the alleged fall: p. 455. In other words, there was there no direct proof of the fall, nor of course of any circumstances attending it. It was contended that the fact of a fall might be inferred from the injury and the fact that an accident caused the fall presumed from the inference that there was a fall. In this case there is direct proof of the fall and of its effect, and the inference of the accidental character of the fall is sought to be based upon a view of all the proven circumstances preceding, attending and following it. One of those circumstances, to be sure, is the alleged fact of the deceased's health at the time, the absence of any internal disorder likely to contribute to the fall. That very important fact must rest upon the evidence as to his condition before and after the fall. But it springs from that evidence, if believed by a jury, not as a mere presumption, but as a proven fact. In the language of Mr. Justice DEAN, in Lerch v. Bard, 162 Pa. 307, at p. 315, here peculiarly applicable, it "is not a mere presumption in any other sense than that all facts, not mathematically demonstrable, are more or less presumptions; it is a fact proven by every circumstance indicative of" it. It was competent, therefore, for the jury, having found it as a fact, to base upon it the inference that the cause of the fall was accidental. Nor is its availability for that purpose necessarily impaired by the decedent's intimation that he did not know how he came to fall. That this admission, standing alone, is consistent with the theory of a sudden attack of vertigo or something of that sort as the cause of the fall cannot be questioned. But neither is it inconsistent with an in-

ference of accidental falling, especially when looked at in connection with other relevant facts already referred to.   Indeed, it seems most natural that a man who, while ascending a short and thoroughly familiar flight of steps as one in normal health and spirits would be apt to ascend it, was suddenly overthrown by some trivial accident, and who in falling with the momentum of his height and weight sustained the injuries and the shock the deceased sustained, would be unable to tell just how the thing occurred.   It happens sometimes in cases of severe personal injuries that the injured party undertakes to narrate in minute detail the precise manner in which the accident took place.   But a careful analysis of his narrative and a comparison of it with the established or conceded facts of the case will perhaps in most of these instances show that what he is telling is the theory of the occurrence which he has subsequently reasoned out and which he honestly mistakes for actual recollection.

What has been said leads to the conclusion that plaintiff's right under the evidence to recover in this case cannot, as a matter of law, be negatived, and therefore that the verdict of the jury in her favor must stand.

The rule to show cause is discharged.

*Error assigned* was the order discharging the rule.

*C. H. Ruhl,* with him *Innes & Williams,* for appellant, cited: Sharpe v. Commercial Travelers' Mut. Accident Assn., 37 N. E. Repr. 353 ; Carnes v. Iowa Traveling Men's Assn., 76 N. W. Repr. 683 ; Manufacturers' Accident Indemnity Co. v. Dorgan, 58 Fed. Repr. 945.

*Frederick W. Nicolls* and *Chester N. Farr, Jr.,* for appellee, were not heard.

PER CURIAM, March 14, 1904 :
This judgment is affirmed on the opinion of the learned judge of the common pleas.