Pomorskie *v.* Prudential Insurance Company
of America, Appellant.

Argued February 4, 1935. Before Frazer, C. J., Simpson, Schaffer, Maxey, Drew and Linn, JJ.

*H. O. Bechtel,* with him *Walter Sidoriak,* for appellant.

*Chas. E. Berger,* for appellee.

Opinion by Mr. Justice Drew, March 25, 1935:

Defendant issued two policies of insurance on the life of Mike Pomorskie, each of which contained a provision for an accidental death benefit "upon receipt of due proof that the death of the insured occurred . . . as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means, of which, except in case of drowning or of

internal injuries revealed by an autopsy, there is a visible contusion or wound on the exterior of the body." Upon the death of the insured on January 11, 1933, the present suit was brought by his brother Anthony, the beneficiary under both policies, to recover the accidental death benefits. The jury returned a verdict in his favor, and from the judgment entered thereon the insurance company has appealed.

It appeared from the testimony of plaintiff's witnesses that the insured, who spent part of his time with his brother Walter in a shack or cabin about three miles from Shenandoah, Schuylkill County, was last seen alive between five and six o'clock on January 10, 1933, when he and Walter were working on a garage near the cabin. Walter left him to go to Shenandoah for provisions, and did not see him again that night. In the morning, Walter, having set out to look for him, found his body lying about twenty yards from the cabin, on a rough logging road which joined a public road in a fork not far from the cabin. The body, fully dressed in heavy winter clothing, was lying on its left side, with the left hand outstretched and the head pointed away from the cabin and down the slope, the ground being uneven and sloping at that point. About two inches of sleet and snow, which had recently fallen and was beginning to melt, covered the ground. After the body had been carried into the cabin, various efforts were made, by Walter and several companions of his, as well as by a doctor who had been summoned, to resuscitate the insured, but without avail. According to the men who worked on him, there was a mark in the region of his left temple, which "looked like a quarter" and was variously described as a bruise, a black-and-blue mark, and a "bust" with a "spot of blood," and which the doctor testified was about two inches in diameter. On the left side of the face there were leaves and gravel and "jackstone marks" or "gravel marks," while that side of the body was wet from head to knee.

The chief question raised on this appeal is whether plaintiff produced sufficient evidence of a death "effected solely through external, violent and accidental means" to support the verdict in his favor. Plaintiff's theory was that the death was due to a head injury caused by an accidental fall. We think the court below was right in holding that his evidence was sufficient. An autopsy was performed in April, 1933, on the body, which had been embalmed and interred in the meanwhile. Dr. H. H. Warner, who performed the autopsy, testified that he found an atrophied condition of the left leg, as well as a surgical wound, apparently of long standing, over the left knee, which he thought indicated an injury several years old. He also discovered slight abrasions on the outer surface of the left arm, below the elbow. Further testimony by Doctor Warner, who was a pathologist, disclosed that he had carefully examined the internal organs, including the heart, and found them to be substantially normal, except for an anthracotic condition of the lungs, which according to him was caused by carbon deposits and was quite common among miners and others in the mining regions, and except for an adherence of the lungs to the chest cavity, which was "probably from an old pleurisy." A microscopic examination of the various organs revealed no evidence of disease or other pathological condition, and it was his conclusion that the insured had not died from any disease.

Dr. R. D. Carl, who had been called when the insured's body was found on January 11th, and who was present at the autopsy, testified that the examination of the atrophied left leg disclosed complete ankylosis of the joint, which would have prevented the bending of the knee. He further testified that the heart and other organs were normal, that there was no evidence of disease, and that "to the best of his knowledge" and "professional opinion" the immediate cause of the death was a head injury. Two other medical experts, one of whom was at the autopsy and the other of whom based his opinion on the testimony

in the case, testified that in their opinions the death was primarily due to concussion of the brain caused by a blow on the left side of the head or by a fall on the gravel, and secondarily due to exposure. No evidence was offered by defendant.

Plainly, this testimony was sufficient to permit a reasonable inference of death "effected solely through external, violent and accidental means." The jury might well have inferred from the position of and marks on the insured's body, the surrounding circumstances, and the fact that he was apparently lame, that he fell by accident, because of some obstruction or slippery condition on the ground, and that in so doing he suffered a blow to his head which caused concussion of the brain and eventually led to his death. There was testimony that he might have had concussion even though no evidence of concussion was found in the brain tissues. The evidence may be sufficient to sustain a finding that death occurred through external, violent and accidental means although there are no eyewitnesses (McCullough v. Railway Mail Assn., 225 Pa. 118), or although it does not "establish a specific one of a number of accidental causes," if it does in fact fairly exclude design or disease: Taylor v. General Accident Assurance Corp., 208 Pa. 439.

Defendant relies on Phila. & Reading R. R. Co. v. Schertle, 97 Pa. 450, Keefer v. Pac. Mut. Life Ins. Co., 201 Pa. 448, and Anderson v. Reading Co., 306 Pa. 246, as showing that the evidence in the instant case was insufficient. In the Schertle and Anderson cases, however, it was held that the evidence was insufficient to show that plaintiff's injury was caused by negligence on defendant's part; while in the Keefer case no autopsy was performed, and the medical testimony was strongly in support of the theory that death resulted from uremic poisoning, rather than from "external, violent and accidental" causes. Those cases are clearly not parallel to the case before us.

It is contended that the trial judge erred in admitting in evidence a "proof of death," filled out on a printed

form, on the back of which the physician had written his opinion that "the man probably tripped and fell and was knocked unconscious lying in the snow for four or five hours and dying from exposure." The denials in defendant's affidavit of defense made it necessary for plaintiff to show that a proof of death had been furnished to defendant, and the document in question was admitted solely for that purpose. Furthermore, the jury was expressly charged that "this proof . . . was offered and received for but two purposes, in the first place, to establish that proof of death was served upon the defendant company, and, secondly, to prove that this proof of death was received by the defendant company on January 27, 1933. This proof, members of the jury, is immaterial and irrelevant for any other purpose in this case, and may not be considered by you in any other respect than for the two purposes which I have mentioned. It is not, of itself, substantive proof as to the manner in which the insured, Mike Pomorskie, came to his death." It is difficult to see how defendant's interests could have been better protected in this respect.

Since plaintiff's evidence was sufficient to support the jury's verdict, and since no error in the conduct of the trial appears, the court below acted properly in overruling defendant's motions and in entering judgment on the verdict.

Judgment affirmed.

DISSENTING OPINION BY MR. JUSTICE SCHAFFER:

It seems to me that there was no evidence in this case to show that the insured came to his death through "accidental" means. There is certainly no proof that he accidentally fell. To so conclude, the jury had to surmise. In the absence of competent evidence to establish death by accidental means, I think no recovery should be permitted; therefore, I dissent.