## Brenneman, Appellant, v. St. Paul Fire and Marine Insurance Company.

Argued May 27, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*P. Nelson Alexander,* for appellant.

· *Robert H. Griffith,* with him *Markowitz, Kagen & Griffith,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, July 2, 1963:

On January 13, 1960, at about 7 p.m., an automobile was seen traveling southwardly on U. S. Route No. 15 near Dillsburg in York County. It left the main

right-of-way, crossed the berm, passed over a grass plot in front of a gasoline station, returned to the highway and then after some general weaving veered off into a ditch where it abruptly stopped, its front end pointing downward at an angle of 45 degrees over a concrete culvert, its rear, like the stern of a sinking ship, raised high.

The Chief of Police, Clyde R. King, cruising in the area, saw the car astride the culvert and investigated. Inside the automobile he found the body of a woman ascertained later to be Mrs. Sara G. Brenneman. Her feet were at the pedals and her body lay on the floor. A Dr. Weldon Pyle, Jr. was summoned and, after suitable examination, pronounced the woman dead.

Her husband, Paul Brenneman, notifed the St. Paul Fire and Marine Insurance Company and requested payment of $10,000 the amount of an accident policy which Mrs. Brenneman had taken out with that company, with him as the named beneficiary. The policy provided for payment of the indicated sum on proof of loss of life "resulting directly and independently of all other causes from accidental bodily injury . . . (excluding such loss) resulting from . . . bodily or mental infirmity or any kind of disease. . . ."

The company refused payment on the basis that Mrs. Brenneman's death was not the result of an accident as defined in the policy. Brenneman brought suit and obtained a jury verdict for the face value of the policy, plus interest. The defendant made a motion for judgment n.o.v. which was granted by the trial court. The plaintiff appealed.

Dr. Weldon Pyle testified that when he examined the body of Mrs. Brenneman in the car, he noted a cut across her nose and abrasions on her knees and left shoulder. Her face was bleeding. A pool of blood some 6 or 7 inches in diameter had accumulated on the floor. An autopsy was performed by Dr. Pyle and

a Dr. James Smith. Dr. Pyle testified that Mrs. Brenneman died of a hemorrhage in the upper cervical canal and cerebella fossi, caused by physical violence to the neck and head. He stated also that Mrs. Brenneman had sustained a fracture of the odontoid process which he described as "a finger-like projection of bone from the second cervical vertebra, this is the second vertebra in the neck, down from the head."

Dr. Smith confirmed that the hemorrhage was the result of trauma. A Dr. George Paulus, deputy coroner, and who also examined the body, testified that the fatal hemorrhage was traumatic in origin, having been caused by a blow—"by the body being thrust forward as it must have been in this automobile."

The defendant produced a Dr. H. H. Evans who testified that he had seen Mrs. Brenneman as a patient three times during the year 1959, that she suffered from severe arteriosclerosis and high blood pressure and that he advised her to retire from work. He stated also that Mrs. Brenneman complained to him of headaches and dizziness.

The judge charged the jury: "From this medical testimony it will be for you to determine whether there was an accident, whether there was an accidental bodily injury, and whether this accidental bodily injury resulted in the death of Mrs. Brenneman independent of other causes, or was there a condition of her health which was a concurrent cause of her death. If you conclude that the condition of her health was but a condition of her health and not a concurrent cause of her death, then of course the plaintiff would be entitled to recover."

The insurance company contends that Mrs. Brenneman did not die as the result of an accident. What is an accident? Everyone knows what an accident is until the word comes up in court. Then it becomes a mysterious phenomenon, and, in order to resolve the

enigma, witnesses are summoned, experts testify, lawyers argue, treatises are consulted and even when a conclave of twelve world-knowledgeable individuals agree as to whether a certain set of facts made out an accident, the question may not yet be settled and it must be reheard in an appellate court. An accident simply stated, is merely an unanticipated event; it is something which occurs not as the result of natural routine but as the culmination of forces working without design, coordination or plan. And the more disorganized the forces, the more confusedly they operate, the more indiscriminately haphazard the clash and intermingling, the more perfect is the resulting accident.

In the case of *Western Commercial Travelers' Assn. v. Smith,* 85 Fed. 401, the insured sustained an abrasion on his foot as the result of wearing new shoes. Although he gave the abrasion reasonable attention, it nevertheless caused blood poisoning from which he died. The question arose as to whether the production of the abrasion resulted from accidental means. Circuit Judge SANBORN of the Eight United States Circuit, discussed accidents as follows: "An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of acutal design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. "On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and *cannot be reasonably anticipated from the use of those means,* an effect which the actor did not intend to produce and which he cannot be charged with the design of producing . . . is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is un-

expected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means." The finding of the trial court that the abrasion was produced by accidental means was affirmed.

Whether the bodily disablement or death, which is the subject of inquiry, was caused by the accident or disease is a matter of weighing the facts which preceded the injury or death. The insurance company maintains that the automobile mishap here under discussion came about as the result of a dizzy spell occasioned by arteriosclerosis and hypertension with which, it is claimed, Mrs. Brenneman was afflicted. Thus, it argues, a pre-existing infirmity contributed to the cause of death.

The trial court, in granting judgment n.o.v. said that Mrs. Brenneman's death could be explained "in no other way than that" Mrs. Brenneman was overcome by dizziness or a blackout which caused her to lose control of her car and carry her to her death. As against the jury's verdict which certainly found, under the instructions of the trial judge, that there was an accident and an accidental injury, the court imposed an arbitrary conclusion. There could, of course, be the surmise that the lost control was due to dizziness or a blackout overcoming the driver, but such a surmisal does not lock the door of inquiry and ratiocination. The only basis upon which the court can found its categorical conclusion that a blackout took the Brenneman car off its normal course is the statement of Dr. Evans that Mrs. Brenneman told him she had had several dizzy spells in the past. But the dizziness of yesterday cannot didactically dictate the decision of today. Moreover, Dr. Evans' statement was flatly contradicted by Mrs. Brenneman's husband who certainly was in an even more intimate relationship to testify on

this subject. He testified that Mrs. Brenneman was in excellent health, that both of them had just returned from a trip to Florida, and that "I never saw her better in her life, cheerful and seemed as though there was never anything wrong with her."

But even if dizziness were accepted as a hypothesis in the case, that of itself would not, without further evidence, prove the defendant's position. With a slight temporary aberration at the wheel, the car could still have come to a harmless stop on the highway, it could have ground to an innocuous halt in the grassy plot. The fatality occurred not because of the erratic course of the automobile, but because it fell into a ditch. The court below in granting n.o.v. said: "The burden was on plaintiff to prove that the car collision which caused the head injury resulted from some event constituting an 'accident,' and to exclude the inference that it resulted from dizziness or blackout caused by arteriosclerosis and high blood pressure."

The plaintiff did indeed have the burden of proof to establish an accident, but he was not required, in doing so, to disprove possible inferences of dizziness or blackouts caused by arteriosclerosis and high blood pressure. After he proved a bona fide accident, with testimony that the violence resulting therefrom caused death, the burden shifted to the defendant insurance company to show that without a pre-existing illness, death would not have occurred.* The defendant did not specifically produce such evidence, but whatever evidence it did produce was placed before the jury in the alembic of factual decision and, in the laboratory of their deliberation, the jury decided that no malady caused or contributed to Mrs. Brenneman's death.

The court below evidently confused cause of accident with cause of death. The cause of the accident

---

* *Fazio v. Pittsburgh Railways*, 321 Pa. 7, 12.

was important only to the extent that the cause contributed to the physiological processes of death. If Mrs. Brenneman's body had been found at the bottom of a 300-foot cliff and there was no evidence as to what caused her to fall from the cliff, liability under the policy would unquestionably have attached. There was no evidence in the case that the alleged illnesses of arteriosclerosis and dizziness of Mrs. Brenneman drove her off the cliff of life into the canyon of death.

The insurance company seems to be of the impression that Mrs. Brenneman somehow was at fault in driving a car after what her doctor assumedly told her, but fault on the part of an insured (in the absence of any nullifying provision in the policy for that reason) does not cancel out a contract of accident insurance. If in this case it had been proved that Mrs. Brenneman had attempted to light a cigarette while driving and, because of that thoughtless act, she had lost control of the car and it dashed against the concrete culvert, causing her death, the accident policy would unquestionably have remained unaffected.

Thoughtlessness, inattention, forgetfulness, miscalculation often are causes of accidents. People, in fact, often take out accident policies, not only to protect themselves from the fault of others, but from their own foibles and imperfections.

One could conjure up many explanations as to why the car left the highway: it could be that Mrs. Brenneman fell asleep, that she was distracted by a radio story or song, that she sought to avoid some obstruction in the highway, lost control and never regained it, that she became overly excited when she first noticed that she had slipped off the highway. There would be no point in enumerating the many possibilities of explanation for the mishap and there is as little point in concluding, in the state of the record, that dizziness, and dizziness alone, smashed the car against the cul-

vert, especially when the history of dizziness was categorically denied, and the jury resolved that conflict in testimony in favor of the plaintiff.

In the case of *Speer v. Western and Southern Life Insurance Co.,* 158 Pa. Superior Ct. 61, the insurance company argued that dizziness had caused the fall of the insured; the fall resulting in a fractured skull. There was evidence that the decedent had, five years prior to the fatal fall, been hit over the head with a pipe and that the blow left him with an occasional unsteady walk and that he sometimes suffered "some dizziness." It was not established at the trial that dizziness assailed the insured just before he fell. The Court held that the question as to whether the death was accidental or not was an issue for the jury to decide, saying: "This testimony was sufficient to go to the jury. Were it otherwise, it would require the proof to *exclude* fainting or dizziness as the antecedent cause of any fall and proof of the precise means by which the fall was brought about, and where there are no eye witnesses such would be impossible, unless it were done exactly as was done here, i.e., 'by evidence of circumstances which viewed as a whole reasonably exclude, by their preponderating probative weight, any other explanation found in the evidence.' "

The Court said also that since "the insured's death was due solely and immediately to the fracture of the skull, death could not have been due, even partially, to a preexisting disease or infirmity."

In the case of *Pomorskie v. Prudential Insurance Co.,* 318 Pa. 185, 177 A. 783, the insured was found lying on the frozen ground, with a bruise and blood on his left temple. The medical testimony indicated that death had been caused by head injuries and exposure. Our Court said: "Plainly, this testimony was sufficient to permit a reasonable inference of death 'effected solely through external, violent and accidental

means.' The jury might well have inferred from the position of and marks on the insured's body, the surrounding circumstances, and the fact that he was apparently lame, that he fell by accident, because of some obstruction or slippery condition on the ground, and that in so doing he suffered a blow to his head which caused concussion of the brain and eventually led to his death. There was testimony that he might have had concussion even though no evidence of concussion was found in the brain tissues. The evidence may be sufficient to sustain a finding that death occurred through external, violent and accidental means although there are no eyewitnesses. . ."

In *Taylor v. General Accident Assurance Corp.*, 208 Pa. 439, 57 A. 830, the assured fell from a fourth step; he died four days later from hemorrhages in the stomach. In sustaining the beneficiary's right to recover on the accident insurance policy in the case we said: "It may be that all this does not absolutely exclude the possibility of a seizure of some kind as the cause of the fall; but it certainly goes to the extent of reasonably excluding both design and disease as an explanation of the fall . . . by making it vastly more probable that the cause of it was one of those innumerable accidents which, common experience teaches, may intervene with disastrous effect between the raising of a foot and the putting down of it. . . [S]o long as the evidence fairly points to one or more of these things as a probable cause of the fall, rather than to an internal disorder—so long as, to quote Merritt v. Preferred Masonic Mut. Acct. Assn. (Mich.), 57 N.W. Rep. 169 . . . there is 'some evidence tending to show that death resulted from an accident rather than design or natural causes,' a prima facie case is made out, and the requirement of affirmative proof of an accident is satisfied."

The case of *Curran v. National Life Insurance Company*, 251 Pa. 420, 429, 96 A. 1041, had to do with

recovery on a fire insurance policy. The defendant there, as here, argued that the circumstances did not exclude all conditions which would have invalidated the policy. This Court said: "The question is not whether the circumstances exclude every other hypothesis, but whether they fairly support the theory advanced by plaintiff and exclude by their preponderating weight the theory advanced by defendant. To hold as a matter of law that plaintiff failed to prove sufficient facts to take the case to the jury, would prevent recovery in most cases . . . because of the difficulty or proving the origin of the fire, thus imposing on the policyholder a burden not contemplated by the contract."

The judgment of the court is reversed with direction that the verdict of the jury be reinstated.

Mr. Justice COHEN concurs in the result.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

It is clear from the testimony of plaintiff's doctors on cross-examination—and the testimony of defendant's doctors was even stronger against plaintiff's claim —that they were unable to express a definite opinion that the death of plaintiff's wife "resulted directly and *independently of all other causes,* from accidental bodily injury."

I would affirm the judgment of non obstante veredicto on the opinion of Judge ROBERT I. SHADLE.