**[J-86-2022] [MO: Wecht, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| LINDA REIBENSTEIN, AS THE ADMINISTRATRIX OF THE ESTATE OF MARY ANN WHITMAN, DECEASED | : No. 32 MAP 2021 |
| | : |
| | : Appeal from the Order of the Superior Court at No. 1624 MDA 2019 dated July 30, 2020, reconsideration denied October 5, 2020, Vacating the Order of the Lackawanna County Court of Common Pleas, Civil Division, at No. 2016-01716 dated August 29, 2019 and Remanding. |
| v. | : |
| | : |
| CHARLES BARAX, M.D.; AND MERCY HOSPITAL, SCRANTON | : |
| _____ | : |
| | : ARGUED: October 26, 2021 |
| LINDA REIBENSTEIN, AS THE ADMINISTRATRIX OF THE ESTATE OF MARY ANN WHITMAN, DECEASED | : |
| | : RESUBMITTED: November 15, 2022 |
| | : |
| v. | : |
| | : |
| PATRICK D. CONABOY, M.D.; AND COGNETTI & CONABOY FAMILY PRACTICE, P.C. | : |
| | : |
| APPEAL OF: PATRICK D. CONABOY, M.D. AND COGNETTI & CONABOY FAMILY PRACTICE, P.C. | : |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE MUNDY**                                    **DECIDED: December 12, 2022**

I agree that the trial court's grant of summary judgment should be reinstated.

However, I dissent from the majority's conclusion that the term "cause of death" as used

in Section 513(d) of MCARE is unambiguous. Section 513 of MCARE provides as follows:

## § 1303.513. Statute of repose

**(a) General rule.--**Except as provided in subsection (b) or (c), no cause of action asserting a medical professional liability claim may be commenced after seven years from the date of the alleged tort or breach of contract.

**(b) Injuries caused by foreign object.--**If the injury is or was caused by a foreign object unintentionally left in the individual's body, the limitation in subsection (a) shall not apply.

**(c) Injuries of minors.--**No cause of action asserting a medical professional liability claim may be commenced by or on behalf of a minor after seven years from the date of the alleged tort or breach of contract or after the minor attains the age of 20 years, whichever is later.

**(d) Death or survival actions.--**If the claim is brought under 42 Pa.C.S. § 8301 (relating to death action) or 8302 (relating to survival action), the action must be commenced within two years after the death in the absence of affirmative misrepresentation or fraudulent concealment of the cause of death.

**(e) Applicability.--**No cause of action barred prior to the effective date of this section shall be revived by reason of the enactment of this section.

**(f) Definition.--**For purposes of this section, a "minor" is an individual who has not yet attained the age of 18 years.

40 P.S. § 1303.513.

Section 513(d) of MCARE establishes a two-year statute of limitations for medical professional liability claims brought under Pennsylvania's wrongful death and survival statutes. *See Dubose v. Quinlan*, 173 A.3d 634, 648 (Pa. 2017). It also includes a provision that equitably tolls the statute of limitations in cases of the "affirmative misrepresentation or fraudulent concealment of the cause of death." 40 P.S. § 1303.513(d). The General Assembly did not define "cause of death," and the parties and the lower courts offered reasonable, competing interpretations of the phrase.

Therefore, in my view, the phrase "cause of death," in the context of MCARE's equitable tolling provision, is ambiguous as it could reasonably (1) refer to solely the medical cause of death as included on a death certificate or (2) more broadly encompass all the conduct causing death. *See A.S. v. Pa. State Police*, 143 A.3d 896, 905-906 (Pa. 2016) ("A statute is ambiguous when there are at least two reasonable interpretations of the text.").

The majority's decision that the phrase means solely the medical cause of death is based on the phrase's use in the Pennsylvania Vital Statistics Law and on dictionary definitions of the phrase. However, the issue in this case is whether the phrase as used in the context of MCARE's statute of limitation with an equitable tolling exception carries the same meaning. As the United States Supreme Court has recognized:

> Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words. Rather, "[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). Ordinarily, a word's usage accords with its dictionary definition. In law as in life, however, the same words, placed in different contexts, sometimes mean different things.

*Yates v. United States*, 574 U.S. 528, 537 (2015) (brackets in original) (citations omitted); *accord Roethlein v. Portnoff Law Assocs., Ltd.*, 81 A.3d 816, 822 (Pa. 2013) (stating "we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear.").

Because courts take a contextual approach to determining the plainness or ambiguity of statutory language, the majority's invocation of the Vital Statistics Law's use of "cause of death" is not dispositive. The Vital Statistics Law is aimed at defining the duties of medical professionals, whereas MCARE defines, *inter alia*, the scope of medical professional liability and a plaintiff's ability to bring medical professional liability claims.

Thus, the context for the phrase "cause of death" is different, and the meaning of the phrase in the Vital Statistics Law does not control its meaning as used in MCARE. *See* 1 Pa.C.S. § 1932(a) (providing "[s]tatutes or parts of statutes are *in pari materia* when they relate to the same persons or things or to the same class of persons or things."). Viewing the phrase in the context of MCARE Section 513, I agree with the Superior Court that "cause of death" as used in Section 513(d) could reasonably mean either the medical cause of death that appears on a death certificate or the conduct contributing to death. The statutory text of Section 513(d) refers to and cites 42 Pa.C.S. § 8301, which provides for wrongful death actions "to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or neglect of another. . . ." 42 Pa.C.S. § 8301(a). From this context, the purpose of a wrongful death action is to provide compensation to the survivors of an individual who dies because of negligence, and it is reasonable that the legislature would provide for equitable tolling of the statute of limitations in cases where the proximate or legal cause of death was affirmatively misrepresented or fraudulently concealed. Additionally, Section 8301 shows that the concept of "cause of death" in wrongful death cases may carry a broader meaning than the immediate physiological processes that precipitate death and may include wrongful acts or neglect that caused death.

Further, *Brenneman v. St. Paul Fire and Marine Insurance Co.*, 192 A.2d 745 (Pa. 1963), the case upon which the majority relies for its assertion that "[w]e have long recognized a material distinction between cause and manner of death," Maj. Op. at 1, illustrates the ambiguity the term "cause of death" may carry when it is used in legal disputes, as opposed to the medical field. *Brenneman* involved an insurance coverage dispute in which the insured died in an automobile accident and the insurance company refused to provide accident coverage based on its conclusion that an underlying health

condition was also a cause of her death. An autopsy of the decedent concluded that she "died of a hemorrhage in the upper cervical canal and cerebelle fossi, caused by physical violence to the neck and head." *Brenneman*, 192 A.2d at 746. Despite the determination of the physiological, medical cause of death, the jury in *Brenneman* was instructed to determine "whether this accidental bodily injury resulted in the death of [the insured] independent of other causes, or whether there was a condition of her health which was a concurrent cause of her death." *Id.* Further, the *Brenneman* Court noted the issue "[w]hether the bodily disablement or death, which is the subject of inquiry, was caused by the accident or disease is a matter of weighing the facts which preceded the injury or death." *Id.* at 747. While this may be an imprecise use of the terms "cause of her death" and "caused by" when the parties were actually disputing the "manner of death," it illustrates that the term "cause of death" is susceptible to a broader meaning, particularly in the legal context.

Because I conclude the phrase "cause of death" in MCARE Section 513(d) is ambiguous, I proceed to consider the factors outlined in Section 1921(c) of the Statutory Construction Act to ascertain the General Assembly's intent:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c).

The General Assembly stated the following "occasion and necessity" for the MCARE chapter, 40 P.S. §§ 1303.501-516, relating to medical professional liability:

### § 1303.502. Declaration of policy

> The General Assembly finds and declares that it is the purpose of this chapter to ensure a fair legal process and reasonable compensation for persons injured due to medical negligence in this Commonwealth. Ensuring the future availability of and access to quality health care is a fundamental responsibility that the General Assembly must fulfill as a promise to our children, our parents[,] and our grandparents.

40 P.S. § 1303.502; *accord* 40 P.S. § 1303.102 (stating the policies of the MCARE Act). In this section, the legislature provided it was balancing the purposes of protecting medical malpractice victims' rights to a fair legal process and reasonable compensation with maintaining a system of high-quality health care by controlling the costs of medical professional liability insurance. Section 513 of MCARE illustrates this balancing by promulgating a seven-year statute of repose for medical professional liability claims (to ostensibly control malpractice insurance costs), with exceptions for foreign objects cases and injuries to minors (to protect certain classes of victims). *See Yanakos v. UPMC*, 218 A.3d 1214, 1226-27 (Pa. 2019) (invalidating the Section 513(a) statute of repose). Similarly, Section 513(d) contains a similar balancing, providing a two-year statute of limitations for wrongful death and survival actions with an exception for cases where the "cause of death" is affirmatively misrepresented or fraudulently concealed. 40 P.S. § 1303.513(d).

By including the doctrine of fraudulent concealment as a means to toll Section 513(d)'s statute of limitations, the General Assembly sought to remedy the mischief of

medical providers whose conduct would prevent reasonably diligent medical malpractice victims from discovering the cause of death within the statute of limitations period.

> The doctrine [of fraudulent concealment] is based on a theory of estoppel, and provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts. The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception. The plaintiff has the burden of proving fraudulent concealment by clear, precise, and convincing evidence. While it is for the court to determine whether an estoppel results from established facts, it is for the jury to say whether the remarks that are alleged to constitute the fraud or concealment were made.

*Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005) (citations omitted). Additionally, a plaintiff invoking the doctrine of fraudulent concealment retains the responsibility "to be reasonably diligent in informing himself of the facts upon which his recovery may be based." *Id.* at 861. This means "a statute of limitations that is tolled by virtue of fraudulent concealment begins to run when the injured party knows or reasonably should know of his injury and its cause." *Id.*; *accord Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 253 (Pa. 2021) (stating "[u]nder our jurisprudence, before a plaintiff may invoke the principles of fraudulent concealment, the plaintiff must use reasonable diligence to investigate her claims[,]" and finding the statute of limitations accrued when the plaintiff knew she was injured).

Limiting the equitable tolling of the statute of limitations based on a defendant's fraudulent concealment or affirmative misrepresentation to only those cases in which a defendant conceals the medical cause of death would leave unprotected medical malpractice victims who exercise reasonable diligence in investigating the cause of death but cannot discover the malpractice resulting in death because the medical professional's conduct interferes with the survivor's investigation. *See* 1 Pa.C.S. § 1921(c)(6) (directing

us to consider the "consequences of a particular interpretation"). Even though death is a definite event that puts survivors on inquiry notice, when a medical professional obstructs a reasonably diligent survivor's subsequent inquiry into the cause of death, the legislature intended that the statute of limitations be tolled to protect the victims of medical malpractice. *See Pastierik*, 526 A.2d at 326-27 (reasoning death is a unique injury that immediately puts survivors on inquiry notice). Most concerning, limiting "cause of death" to the constrained definition of medical cause of death as listed on a death certificate, undermines the statute's inclusion of the remedies of affirmative misrepresentation and fraudulent concealment. Under the reasoning of the Majority, a decedent who dies from a cardiorespiratory failure and whose death certificate states cardiorespiratory failure as the medical cause of death would be precluded from utilizing affirmative misrepresentation or fraudulent concealment when the cardiorespiratory failure was caused by inappropriate care rendered by a medical professional. For instance, survivors of a decedent whose identified medical cause of death was medically accurate would be precluded from invoking affirmative misrepresentation or fraudulent concealment if they later discovered that the death was the result of negligent treatment instead of the natural progression of the decedent's condition. By including affirmative misrepresentation and fraudulent concealment in Section 513(d) as means to equitably toll the statute of limitations, I believe the legislature intended to give plaintiffs a remedy in cases where the medical cause of death was accurately reported on the death certificate, but the legal cause of death was affirmatively misrepresented or fraudulently concealed. In this case, the lack of affirmative misrepresentation or fraudulent concealment makes the issue more difficult to conceptualize, but when that conduct is present, the Majority eliminates the remedy of equitable tolling.

Also, limiting "cause of death" to the medical cause of death does not further the purpose of controlling malpractice insurance costs. A two-year statute of limitations with an equitable tolling exception for a concealment or misrepresentation introduces an element of actuarial uncertainty into medical malpractice insurance premium costs, regardless of how we interpret "cause of death." Therefore, in my opinion the legislature included the equitable tolling provision to protect the rights of plaintiffs in wrongful death and survival actions arising from medical malpractice. Consonant with this purpose, the statute of limitations should be tolled when a defendant's conduct interferes with a reasonably diligent survivor's investigation into the cause of death by affirmatively misrepresenting or fraudulently concealing either the medical cause of death or the conduct the survivor alleges led to the decedent's death.

Because I would find "cause of death" as used in Section 513(d) of MCARE is ambiguous and I interpret it as including the conduct leading to death, as well as the medical cause of death, I agree with that portion of the Superior Court's decision. However, I disagree with the Superior Court that this case should be remanded to the trial court. As set forth above, the doctrine of fraudulent concealment holds that a defendant is estopped from invoking the statute of limitations when the defendant's conduct causes the plaintiff to deviate from conducting a factual inquiry. *Fine*, 870 A.2d at 860. To invoke the doctrine, the plaintiff has the burden of proving fraudulent concealment and must also exercise reasonable diligence in investigating the facts before turning to the doctrine. *Id.*; *Rice*, 255 A.3d at 253. Ultimately, the question of whether fraudulent concealment arises from the facts is a question of law for the court. *Fine,* 870 A.2d at 860 (stating "[w]hile it is for the court to determine whether an estoppel results from established facts, it is for the jury to say whether the remarks that are alleged to constitute the fraud or concealment were made.").

Based on the record in this case, it is clear Reibenstein failed to exercise reasonable diligence and none of the conduct of Conaboy or Barax caused her to deviate from her inquiry into the facts. Significantly, Reibenstein admitted that her decision to not pursue claims against Conaboy was based on her inability to obtain a certificate of merit after her experts examined the Decedent's medical records. Reibenstein's Brief at 6. Those medical records included the April 23, 2010 radiology report, which showed the presence of a "poorly visualized" abdominal aortic aneurysm and stated that "Dr. Conaboy was contacted with this study [and] was read with the findings." Radiology Report of Decedent, 4/23/10, at 2. This radiology report put Reibenstein on notice of Dr. Conaboy's involvement in the treatment that led to Decedent's death, and Reibenstein has not established how the report itself was fraudulently concealed or otherwise contained affirmative misrepresentations. As Reibenstein does not point to any actions she took to investigate Conaboy's role, she cannot meet the reasonable diligence component of the fraudulent concealment doctrine and a remand would be inappropriate. Where a plaintiff fails to diligently pursue a potential claim, she is precluded from equitably tolling the applicable statute of limitations through the doctrines of fraudulent concealment or affirmative misrepresentation. *See Rice*, 255 A.3d at 244.

For these reasons, I concur in the result only and dissent as to the majority's interpretation of Section 513(d).

Justice Dougherty joins this concurring and dissenting opinion.