NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3275
_____

KIMBERLY L. ROSENBERG; HOWARD I. ROSENBERG

v.

HUDSON INSURANCE COMPANY

(D.C. No. 2:22-cv-00137)


HOWARD I. ROSENBERG; KIMBERLY L. ROSENBERG

v.

CHUBB INDEMNITY INSURANCE COMPANY

(D.C. No. 2:22-cv-00198)

Howard I. Rosenberg; Kimberly L. Rosenberg,
Appellants
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Nos. 2:22-cv-00137 & 2:22-cv-00198)
District Judge:  Honorable Marilyn J. Horan
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 13, 2025
_____

Before:  PHIPPS, FREEMAN, and CHUNG, *Circuit Judges*

(Filed: February 11, 2025)

—————

OPINION*

—————

PHIPPS, *Circuit Judge*.

After their adult son shot and killed his twenty-two-year-old former classmate at their house, two homeowners allegedly delayed discovery of the murder weapon and the victim's body. Based on that delay, the victim's mother sued the homeowners in state court for the intentional infliction of emotional distress. The homeowners then sought legal representation under two of their insurance policies – their homeowner's policy and their umbrella policy. Both policies imposed a duty on the insurers to defend the insureds against claims related to 'accidents,' though the two polices used different language to describe the accidents that would trigger coverage.

The insurance companies denied coverage. The homeowner's insurer denied coverage on several grounds, including that the claim against the homeowners did not relate to an accident. The umbrella insurer likewise denied coverage on that basis as well as several other grounds, including that an insurer's promise to defend an insured for criminal acts is contrary to public policy and thus unenforceable under Pennsylvania law.

To challenge those denial-of-coverage decisions, the homeowners initiated this suit in the District Court against both insurers. In resolving the parties' cross-motions for judgment on the pleadings, the District Court rejected the claims by the homeowners and upheld the insurers' denial-of-coverage decisions. On *de novo* review of the District Court's decision in this appeal brought by the homeowners, we will affirm the judgment of the District Court for the reasons below.

—————

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

## I. BACKGROUND

Adam Rosenberg and Christian Moore-Rouse befriended one another while they were students at the Community College of Allegheny County. On December 21, 2019, however, while at his parents' house, Adam shot twenty-two-year-old Christian in the back of the head with a nine-millimeter Ruger SR9C handgun. Adam then dragged Christian's body across the road in front of his parents' home and left it in a wooded park.

It took over two months for the police to find Christian's body. The gun turned up a month after Christian's killing – produced by Martha Laux. She told police that she had found a handgun along a trail while walking her dog in North Park, a large public park in Allegheny County. Over a month after receiving the handgun, homicide detectives found Christian's body. They later learned not only that the weapon used to kill Christian was already in police custody but also that Laux was the marriage counselor for Adam's parents, Kimberly and Howard Rosenberg.

Based on the delayed discovery of her son's body, Christian's mother, T. Lee Rouse, sued the Rosenberg parents in the Court of Common Pleas of Allegheny County, Pennsylvania. Her complaint alleged that in the time between Christian's disappearance and the recovery of his remains, she felt "the natural fear and severe emotional distress a [m]other emotionally close to her young adult son would experience during that period of time." Compl. ¶ 35, *Rouse v. Rosenberg*, No. GD-21-014912 (Pa. Ct. Com. Pl. Dec. 14, 2021), Doc. No. 1. She blamed the Rosenbergs for the delay in finding Christian's body, and she pursued tort claims for the intentional infliction of emotional distress. *See Britt v. Chestnut Hill Coll.*, 632 A.2d 557, 561 (Pa. Super. Ct. 1993) (explaining that a claim for the intentional infliction of emotional distress may be proven by a showing of either a specific or reckless intent to cause distress (citing Restatement (Second) of Torts § 46 (Am. L. Inst. 1965))).

The Rosenbergs had two insurance policies under which they sought a legal defense against Rouse's claims. They had a homeowner's insurance policy issued by Chubb Indemnity Insurance Company, which is incorporated in New York and has a principal place of business in New Jersey. They also had an umbrella insurance policy issued by Hudson Insurance Company, which is incorporated in Delaware and has a principal place of business in New York.

Both policies provided duty-to-defend coverage for 'occurrences.' And both policies defined 'occurrence' through use of the term 'accident.' The Chubb homeowner's policy defined 'occurrence' as "*an accident* which begins within the policy period resulting in bodily injury, shock, mental anguish, mental injury, or property damage." Chubb Pol'y T-1 (App. 293) (emphasis added). The Hudson umbrella policy, which promised to defend against claims falling within its excess indemnification guarantee, likewise used the term 'accident' in its definition of 'occurrence.' But that passage also included an unexpected-or-unintended injury clause, such that an occurrence referred to "*an accident* or *accidental event*, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended* from the standpoint of the insured." Hudson Pol'y 8 (App. 328) (emphasis added). Neither policy specifically defined the term 'accident.'

After they were served with Rouse's complaint, the Rosenbergs contacted Chubb and Hudson to request coverage under the policies. Both insurers denied coverage, and as a result, the Rosenbergs expected to personally incur over $75,000 in defense costs.

Based on those coverage denials, the Rosenbergs, both of whom are Pennsylvania citizens, invoked the District Court's diversity jurisdiction to sue Chubb and Hudson. *See* 28 U.S.C. § 1332(a), (c); *Myers v. State Farm Ins. Co.*, 842 F.2d 705, 707 (3d Cir. 1988)

4

(explaining that a suit by an insured against his insurer is not a 'direct action' within the meaning of section 1332(c)(1)'s insurer domicile rules (citing *Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 473 (1st Cir. 1979))). They sought declaratory judgments that the insurers had duties to defend them against Rouse's suit, and they also brought breach-of-contract claims against the insurers. The insurance companies answered the complaints, and Rouse was permitted to intervene to support the Rosenbergs' claims for coverage.

The Rosenbergs and the insurance companies then cross-moved for judgment on the pleadings. Through an order dated October 31, 2022, the District Court granted judgment in favor of Chubb and Hudson. The accompanying memorandum opinion explained that the coverage denials were justified because the factual allegations in Rouse's complaint could not "be described as fortuitous or accidental," and thus were not 'accidents' within the meaning of the policies. *Rosenberg v. Hudson Ins. Co.*, 638 F. Supp. 3d 510, 519 (W.D. Pa. 2022). Alternatively, the District Court reasoned that even if either insurer had a duty to defend, it would not be enforceable because Pennsylvania law forbids, as contrary to public policy, insuring criminal acts. *See id.* at 521–22 (explaining that a duty to defend would be unenforceable under Pennsylvania law); *id.* at 525 (applying the public policy determination to Hudson's policy). And concealing evidence of a crime in Pennsylvania renders one an accessory after the fact, and it is also a crime to conspire to hinder a prosecution. *See id.* at 522 (first citing 18 Pa. Cons. Stat. § 5105 (prohibiting the concealment of evidence of a crime); and then citing *id.* § 903 (prohibiting criminal conspiracy)).[1]

---

[1] The District Court identified additional alternative grounds for its ruling. It determined that two exclusions in the Chubb policy – one for intentional acts, the other for molestation, misconduct, or abuse – foreclosed the Rosenbergs' claims for coverage. *See Rosenberg*, 638 F. Supp. 3d at 519–24. It also recounted that reckless intent is sufficient for an intentional infliction of emotional distress claim under Pennsylvania law, and because

Through a timely notice of appeal, the Rosenbergs invoked this Court's appellate jurisdiction to challenge the District Court's final decision. *See* 28 U.S.C. § 1291. Rouse did not appeal.

## II. DISCUSSION

Under Pennsylvania law, an insurer's duty to defend depends on the complaint against the insured: if the complaint against the insured alleges facts that describe an event potentially covered by the policy, then the insurer has a duty to defend the insured. *See Erie Ins. Exch. v. Moore*, 228 A.3d 258, 265 (Pa. 2020) (explaining that a duty to defend arises "if the factual allegations of the complaint on its face encompass an injury that is . . . potentially within the scope of the policy" (emphasis omitted) (quoting *Babcock & Wilcox Co. v. Am. Nuclear Insurers*, 131 A.3d 445, 456 (Pa. 2015))); *see also Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 517 (3d Cir. 2012) (explaining Pennsylvania's 'four corners' rule (citing *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010))). Under that approach, the duty-to-defend determination turns on the factual allegations in the complaint against the insured, and "the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered." *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999); *accord Twin City Fire Ins. Co. v. Glenn O. Hawbaker, Inc.*, 118 F.4th 567, 576–77 (3d Cir. 2024) (citing *Haver*, 725 A.2d at 745).

---

recklessness "requires an awareness of one's conduct that stretches beyond accidental," it concluded that the insurers had no duty to defend the Rosenbergs against that claim. *Id.* at 519.

**A. The Rouse Complaint Did Not Trigger Chubb's Duty to Defend Because the Injuries Alleged Did Not Result from an Accident.**

Under the Rosenbergs' homeowner's policy, Chubb's duty to defend depends on whether Rouse's alleged injuries resulted from 'an accident.' Although the policy itself does not define 'accident,' Pennsylvania courts have defined that term as meaning "the culmination of forces working without design, coordination or plan," *Brenneman v. St. Paul Fire & Marine Ins. Co.*, 192 A.2d 745, 747 (Pa. 1963), prompted by some "degree of fortuity," *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 292 (Pa. 2007) (citing *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 898 (Pa. 2006)); *accord State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009) (citing *Brenneman*, 192 A.2d at 747); *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 405 (3d Cir. 2016) (citing *Baumhammers*, 938 A.2d at 292). But the allegations against the Rosenbergs do not involve such chance. Rather, Rouse alleged that the Rosenbergs acted intentionally by concealing the handgun that would have implicated Adam and led to the earlier discovery of Christian's body. Accordingly, the District Court did not err in rejecting the Rosenbergs' claims for coverage under their homeowner's policy with Chubb.

**B. The Rosenbergs Have Not Contested that Coverage Under the Hudson Policy Would Be Inconsistent with Public Policy.**

Unlike the Chubb policy, the Hudson policy defined 'occurrence' through the inclusion of an unexpected-or-unintended injury clause, which injects subjective considerations into the meaning of that term. *See Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 253, 259 (3d Cir. 2019). But it is not necessary to assess the effect of those subjective considerations here: the District Court alternatively held that any duty to defend would not be enforceable in this instance because Pennsylvania law forbids insuring criminal acts as contrary to public policy. *See Rosenberg*, 638 F. Supp. 3d at 522, 525.

7

And on appeal, the Rosenbergs did not develop an argument to contest that ruling. *See* Fed. R. App. P. 28(a)(5); *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993) (explaining that the suggestion of an issue "in passing in a short footnote in [one's] opening brief, without argument or relevant citation" will not preserve an argument). Because they abandoned any challenge to that independent basis for the District Court's decision, the Rosenbergs cannot prevail on their appeal of the District Court's judgment in favor of Hudson. *See Kost*, 1 F.3d at 182.

## III. CONCLUSION

For these reasons, we will affirm the judgment of the District Court.