Shirley SHIFFLER, Administratrix of the
Estate of John W. Shiffler, Deceased,
and Shirley Shiffler, in her own right

v.

The EQUITABLE LIFE ASSURANCE
SOCIETY OF the UNITED STATES,
Westinghouse Electric Corporation,
Westinghouse Insurance Plan.

Appeal of Shirley SHIFFLER.

No. 87–1407.

United States Court of Appeals,
Third Circuit.

Argued Dec. 8, 1987.

Decided Jan. 26, 1988.

by reason of the death of an employee of the defendant Westinghouse Electric Corporation (Westinghouse). On defendants' motion, the district court granted summary judgment dismissing the action. Plaintiff appeals, raising issues relating to the district court's jurisdiction and the scope of the policies' coverage. For the reasons which follow we will affirm the district court's order.

## I.

The facts in this case may be briefly recited. On June 9, 1980 the employee, John Shiffler, died of a heart attack while sitting at his desk at Westinghouse.[1] At that time Mr. Shiffler was enrolled in two employee benefit plans providing coverage for accidental death offered by Westinghouse, the Personal Accident Insurance Plan (PAP) and the Westinghouse Insurance Plan (WIP). Westinghouse was the administrator and defendant, Equitable Life Assurance Society (Equitable) was the insurer for the plans. Mr. Shiffler's wife, plaintiff Shirley Shiffler, was the beneficiary under both policies issued pursuant to the plans.

Fred D. Furman (argued), Kleinbard, Bell & Becker, Philadelphia, Pa., for appellees Westinghouse Elec. Corp. and Westinghouse Ins. Plan.

Michael R. Lastowski (argued), Saul, Ewing, Remick & Saul, Philadelphia, Pa., for appellee The Equitable Life Assur. Soc. of the U.S.

Michael T. McDonnell (argued), McDonnell & McDonnell, P.A., Drexel Hill, Pa., for appellant.

Before GREENBERG, SCIRICA, and HUNTER, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

This appeal arises from a suit to recover proceeds of insurance policies allegedly due

Subsequently, Mrs. Shiffler filed a claim for benefits under the Pennsylvania Workmen's Compensation Statute, Pa.Stat.Ann. tit. 77, § 751 (Purdon 1987), asserting that the heart attack was work related. At first Westinghouse denied liability but, after extended hearings, it agreed to pay workmen's compensation benefits.

Mrs. Shiffler then presented claims for accidental death benefits under the PAP and the WIP to Equitable which was authorized to determine whether to pay claimants. Equitable denied the claims as it found that Mr. Shiffler's death did not fall within the policies as it was not caused by "violent, external and accidental means," as required by both and, additionally, because the death was not "non-occupational" as required by the WIP. Mrs. Shiffler

1. The date of death in the complaint is given as June 26, 1980 but the death certificate recites the date as June 9, 1980.

was, however, paid a substantial ordinary death benefit under the WIP.

In November, 1984 Mrs. Shiffler filed a complaint in the Court of Common Pleas for Philadelphia County, Pennsylvania, naming Equitable, Westinghouse and the Westinghouse Insurance Plan as defendants. On December 27, 1984 the Westinghouse defendants filed a petition removing the case to the United States District Court for the Eastern District of Pennsylvania. In its petition Westinghouse alleged that the district court had original jurisdiction to hear the action under 28 U.S.C. § 1331 and under 29 U.S.C. § 1132(e)(1), a provision of the Employee Retirement Income Security Act (ERISA).[2] According to defendants, the purpose of Mrs. Shiffler's suit was to recover benefits and enforce rights under the employee benefit plans and, thus, the suit was essentially an ERISA action within district court jurisdiction. Equitable joined in the petition without stating any separate basis for district court jurisdiction.

Mrs. Shiffler thereafter filed two unsuccessful petitions to remand the action to the state court. In the second of these applications she argued that her action should not be characterized as a suit under ERISA as the complaint asserted only state law claims. She contended that because there was no cause of action under ERISA and there was not diversity between the parties, the district court could not properly exercise jurisdiction. The district court partially rejected her arguments as it found that the claims being asserted against the Westinghouse defendants were pre-empted by ERISA and thus the district court possessed federal question jurisdiction. Pending further briefing the court reserved decision on the issue of whether it had jurisdiction over the seemingly state law claims Mrs. Shiffler was asserting against Equitable. Subsequently, on June 18, 1986, the district court ruled that diversity existed between Mrs. Shiffler and Equitable and thus the court had an independent ground of jurisdiction over the claims asserted against Equitable.

On June 24, 1987 the district court entered an order granting motions for summary judgment filed by Equitable, Westinghouse and the Westinghouse Insurance Plan. The court found that Mr. Shiffler's death was clearly not covered by the terms of the policies at issue and, accordingly, Mrs. Shiffler could not establish, as required by our decision in *Struble v. New Jersey Brewery Employees' Welfare Trust Fund*, 732 F.2d 325 (3d Cir.1984), that the denial of benefits under the ERISA plan was "arbitrary and capricious." This appeal followed.

## II.

Mrs. Shiffler first challenges the district court's exercise of jurisdiction over her complaint. She asserts that the complaint contains only state law claims and accordingly should not have been removed to federal court.

Under 28 U.S.C. § 1441(a) "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." The removal of Mrs. Shiffler's action to the district court was proper, therefore, if the district court had original jurisdiction over her complaint. The district court found that it possessed original jurisdiction over the complaint as it had federal question jurisdiction over the claims against Westinghouse and the Westinghouse Insurance Plan and diversity jurisdiction over the claims against Equitable.

**2.** 29 U.S.C. § 1132(e)(1) dealing with jurisdiction of district courts under ERISA provides: (1) Except for actions under subsection (a)(1)(B) of this section, [actions initiated by participants or beneficiaries to enforce or clarify rights under a plan] the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

Determination of whether there is federal question jurisdiction requires us to consider the pre-emptive effect of ERISA found in 29 U.S.C. § 1144(a) as Mrs. Shiffler's characterizes her claims as being under state law. That section contains three clauses commonly referred to as the pre-emption clause, the savings clause and the deemer clause.[3] The Supreme Court recently described the interrelationship of these provisions:

> If a state law 'relate[s] to ... employee benefit plan[s],' it is pre-empted. § 514(a). The saving clause excepts from the pre-emption clause laws that 'regulat[e] insurance.' § 514(b)(2)(A). The deemer clause makes clear that a state law that 'purport[s] to regulate insurance' cannot deem an employee benefit plan to be an insurance company. § 514(b)(2)(B).

*Pilot Life Ins. Co. v. Dedeaux,* — U.S. —, —, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987).

■ This case primarily implicates the pre-emption clause. The Supreme Court has noted the expansive sweep of this clause. *Pilot Life,* — U.S. at —, 107 S.Ct. at 1553; *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 759, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985). Specifically, the phrase "relate to" has been given the broadest common sense meaning, such that a state law "relates to" a benefit plan if it has a connection with or reference to such a plan. *Pilot Life,* — U.S. at —, 107 S.Ct. at 1553; *Metropolitan Life v. Massachusetts,* 471 U.S. at 739, 105 S.Ct. at 2389. In addition, the Supreme Court has emphasized that the pre-emption clause is not limited to state laws specifical-

ly designed to affect employee benefit plans. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). For example, in *Pilot Life* the Court held that the common law causes of action of "tortious breach of contract" and "the Mississippi law of bad faith" were related to the employee benefit plan which was the focus of the litigation and accordingly the claims fell under the ERISA pre-emption clause. — U.S. at —, 107 S.Ct. at 1553.

Mrs. Shiffler's second and third causes of action were asserted against Westinghouse and the Westinghouse Insurance Plan. Her second cause of action alleged that Westinghouse as "plan administrator" breached its duty to compel Equitable to pay the benefits due to her and breached its duty to bring an action against Equitable for the insurance proceeds. The third cause of action specifically alleged that the Westinghouse Insurance *Plan* had failed to see that Mrs. Shiffler was paid the benefits due under the WIP, had, in effect, denied her a benefit due, earned and paid for by Mr. Shiffler and had breached its contractual duty to Mr. Shiffler by failing to make the payments due. Mrs. Shiffler in both the second and third causes of action sought to recover proceeds under the insurance policies together with interest, attorney's fees and costs.

■ Thus while Mrs. Shiffler would have us consider her claims as setting forth state common law causes of action, clearly they "relate to" the employee benefit plans when that phrase is given its broad common sense meaning, for no matter how her action is characterized her goal was to re-

---

3.  The pre-emption clause provides:

    Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....

    § 514(a), 29 U.S.C. § 1144(a).

    The saving clause reads:

    Except as provided in subparagraph (B) [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any state which regulates insurance, banking, or securities.

    § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A).

    Finally the deemer clause states:

    Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

    § 514(b)(2)(B), 29 U.S.C. § 1144 (b)(2)(B).

cover the proceeds claimed under the PAP and the WIP. Accordingly, to the extent that Pennsylvania recognizes the causes of action alleged by Mrs. Shiffler against Westinghouse and the Westinghouse Insurance Plan, her common law claims are pre-empted by ERISA. It therefore follows that the district court had jurisdiction over these claims under 29 U.S.C. § 1132(e)(1) and thus they were properly removed to the district court. Mrs. Shiffler's attempt to plead the case as raising state claims is simply not effective to obviate the necessarily federal character of the action. *See Metropolitan Life Insurance Co. v. Taylor,* —— U.S. ——, ——, 107 S.Ct. 1542, 1548, 95 L.Ed.2d 55 (1987).[4]

We also find that the district court had jurisdiction over the claims against Equitable as they clearly "relate to" the employee benefit plan in question and are therefore pre-empted by ERISA. In her cause of action against Equitable Mrs. Shiffler set forth six counts claiming that (1) "Equitable is bound by Westinghouse's actions" and is consequently estopped from attempting to assert language in the contract to avoid payment of the accidental death benefits; (2) "Equitable is bound by the contractual language of the insurance contract" and arbitrarily concluded there was no coverage; (3) "Westinghouse engaged in tortious conduct against insured which estops Equitable from denying insurance coverage," the tortious conduct being the infliction of emotional distress; (4) "Equitable is bound by Westinghouse's intentional infliction of injury" meaning Westinghouse intentionally caused Mr. Shiffler's distress; (5) "Equitable did not communicate the limitations of the accidental insurance policies to the insured;" and (6) "Equitable included no limitations regarding emotional distress." While these counts do include language asserting that Mr. Shiffler had been the victim of a tort, in fact, Mrs. Shiffler's theory was that Equitable was not excused from payment as Mr. Shiffler's death resulted from such wrongful conduct. Thus the recovery she sought was the insurance proceeds, interest and attorney's fees and costs. Therefore, these claims clearly "relate to" the employee benefit plan and are pre-empted by ERISA. *See Salomon v. Transamerica Occidental Life Ins. Co.,* 801 F.2d 659, 660 (4th Cir.1986). Accordingly, they were within the jurisdiction of the district court and therefore they were properly removed as to Equitable on the basis of federal question jurisdiction as set forth in the petition for removal.[5]

In reaching our result, we have not overlooked Mrs. Shiffler's contention that her complaint includes a claim for intentional infliction of emotional distress and that, under *Kelly v. International Business Machines Corp.,* 573 F.Supp. 366 (E.D.Pa.

**4.** Mrs. Shiffler attempts to avoid this result by pointing out that her husband paid the premiums for the PAP. Nevertheless, it is perfectly clear that Westinghouse's action in endorsing the PAP and in administering it except for determining whether to pay benefits renders the plan an employee benefit plan within 29 U.S.C. § 1002(1). *See* 29 C.F.R. § 2510.3–1(j)(3).

**5.** We have no doubt that the district judge's ruling on diversity was correct. Mrs. Shiffler is a citizen of Pennsylvania and Equitable is a New York corporation and the jurisdictional amount was reached here. 28 U.S.C. § 1332(a). The argument made by Mrs. Shiffler against diversity jurisdiction is predicated on 28 U.S.C. § 1332(c) which provides that in any direct action against an insurer of a policy or contract of liability insurance in which the insured is not joined as a defendant that the insurer shall be deemed, *inter alia,* a citizen of the state of which its insured is a citizen. Mrs. Shiffler contends

that Westinghouse is a resident of Pennsylvania and should be regarded as the insured under 28 U.S.C. § 1332(c), thus precluding a finding of diversity jurisdiction. We disagree. The insured here was Mr. Shiffler and this case does not involve liability insurance. It seems obvious that 28 U.S.C. § 1332(c) is intended to be applicable in situations in which traditionally an insured would be a defendant but because of a modification of tort law or for some other reason the insurer is the defendant in its place. Thus 28 U.S.C. § 1332(c) is inapplicable here. *See Kosmyna v. Bankers Life and Casualty Co.,* 550 F.Supp. 142 (E.D.Mich.1982). We do not agree with the contrary result in *Tyson v. Connecticut General Life Ins. Co.,* 495 F.Supp. 240 (E.D.Mich.1980). Of course, the presence of the nondiverse Westinghouse defendants does not destroy diversity jurisdiction since there was an independent basis for federal jurisdiction over them. *See Brown v. Mine Safety Appliances Co.,* 753 F.2d 393, 395 (5th Cir.1985).

1983), *aff'd mem.*, 746 F.2d 1467 (3d Cir. 1984), such a claim is not pre-empted by ERISA. We are, however, unable to find a claim for this tort in the complaint as Mrs. Shiffler's allegations of wrongful conduct are simply used as a vehicle to permit her to reach the insurance proceeds.[6]

### III.

Inasmuch as we find that the district court properly exercised jurisdiction over Mrs. Shiffler's complaint, we now turn to review the district court's substantive disposition of this case. In reviewing the district court's grant of summary judgment, we apply the same test that the district court utilized initially. Thus we can uphold the grant of summary judgment only if there is no genuine issue of material fact and defendants were entitled to judgment as a matter of law. *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 144 (3d Cir.1987); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Therefore we review the record to determine whether it could be found that the denial of benefits was "arbitrary and capricious." *Struble v. New Jersey Brewery Employees' Welfare Fund*, 732 F.2d at 333; *Rosen v. Hotel and Restaurant Union*, 637 F.2d 592, 596 n. 5. (3d Cir.), *cert. denied*, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981); *see also Bruch v. Firestone Tire and Rubber Co.*, 828 F.2d 134,

138 (3d Cir.1987).[7] Accordingly defendants need only show that the evidence presents no genuine factual issue to controvert their claim that the denial was not a "clear error," and was "rational." *See Federal Communications Commission v. National Citizens Committee for Broadcasting*, 436 U.S. 775, 803, 98 S.Ct. 2096, 2116, 56 L.Ed.2d 697 (1978); *Bowman Transportation, Inc. v. Arkansas—Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974). To oppose defendants' motion successfully Mrs. Shiffler must demonstrate that the evidence raises a genuine factual issue as to whether she was so clearly entitled to the benefits she sought that the denial was "clear error" or "not rational."

The WIP provides in pertinent part:

[B]enefits will be paid for non-occupational bodily injury caused solely through violent, external and accident means which results in death.... Benefits are paid provided that the ... death is not caused directly or indirectly by disease....

Equitable and the Westinghouse defendants argue that Mr. Shiffler's death was not covered by the terms of this policy because his death was clearly "occupational."[8] The term "non-occupational" is defined as:

The term 'non-occupational,' as applied to sickness or injury, means any sickness or injury for which you are not entitled

---

**6.** We are uncertain why Mrs. Shiffler did not assert a claim for intentional infliction of emotional distress. Perhaps it would have been met with an exclusivity defense under Pa.Stat.Ann. tit. 77, § 481 (Purdon 1987) as a worker's compensation settlement was made here. In their brief the Westinghouse defendants assert that any such claim was barred by the statute of limitations. In any event, the claim was not made and in reading the complaint to mean what it says we are not overlooking the provisions of Fed.R.Civ.P. 8(j). We obviously have no occasion to pass on the continuing viability of *Kelly* in light of *Pilot Life Ins. Co. v. Dedeaux,* — U.S. at ——, 107 S.Ct. at 1549.

**7.** We recognize that in *Bruch* the arbitrary and capricious standard was not applied but we do not understand that case necessarily to apply in a situation such as this involving "personal

claims for benefits," *see Struble,* 732 F.2d at 333, even though it could hardly be said that Equitable is disinterested in this matter. In any event we would reach the same result even if we used the standards applicable to a claim under state law.

**8.** There seems to be some confusion in this case as to which policy included the requirement that the bodily injury be from "non-occupational" causes. Mrs. Shiffler and the Westinghouse defendants treat this provision as having been in the WIP. The trial judge and Equitable mention it in connection with the PAP. We agree with Mrs. Shiffler and the Westinghouse defendants. This seeming error by the trial judge does not undercut his result. It simply means that there were two independent reasons for denial of coverage of the WIP claim rather than the PAP claim.

to benefits under any Workers' Compensation or Occupational Disease Laws or any other similar legislation, but does not mean any sickness or injury arising out of or in the course of any employment for wage or profit as an employee of any other employer; however, the term will apply to sickness or injury which is a direct result of employment with Westinghouse and for which you are not entitled to benefits under any Workers' Compensation or Occupational Disease Laws or any similar legislation.

Equitable and Westinghouse argue that Mr. Shiffler's death was demonstrated to be indisputably "occupational" by reason of the payment of workmen's compensation and thus no recovery for it is allowable under the WIP. Mrs. Shiffler contends that the accurate reading of "non-occupational" means "those risks associated with work" and that Westinghouse so harassed her husband that it caused his death and that such conduct cannot be deemed an occupational risk.

■ We find the policy provision to be unambiguous. If, as in this case, a sickness or injury is compensable under state workmen's compensation law it cannot be non-occupational. In addition, Mrs. Shiffler's complaint is replete with allegations that her husband's heart attack was work-related. Equitable's determination that Mr. Shiffler's death could not be attributed to a "non-occupational" cause is so clearly supported by the record that no genuine issue of material fact is raised in the record as to its rationality. Accordingly, the district court properly granted summary judgment dismissing the claim on the WIP.

The PAP does not contain the coverage requirement that an accidental death be "non-occupational" in nature. But the PAP does include the following two clauses:

Benefits will be paid for bodily injury caused solely through violent, external and accidental means which results in death.... Benefits are paid provided that the death ... is not caused directly or indirectly by disease ...

This clause is similar to the WIP provisions. Equitable and the Westinghouse defendants argue that Mr. Shiffler's death was caused, at least in part, by a pre-existing heart condition and, therefore, was not covered under the terms of the policies. They contend also that there was no "accidental" death. Mrs. Shiffler maintains that her husband's death falls within the policies as the entire period of job-stress which her husband allegedly endured constituted the "accidental" and "violent" cause of his death and, therefore, only a disease contracted by Mr. Shiffler prior to that time should be considered "pre-existing." Furthermore, she argues that a determination of whether her husband was inflicted with a disease was a question for the jury.

■ Resolution of the coverage issue requires interpretation of the two clauses. Where an insurance policy contains a clause providing for recovery for fatal injuries "caused solely through violent external and accidental means," then there may be recovery on the policy if the accident was the predominant or proximate cause of death. *See Johnson v. Kentucky Central Life & Acc. Ins. Co.*, 144 Pa.Super. 116, 18 A.2d 507, 511 (1941). However, if the policy contains an additional clause precluding recovery if the death was caused directly or indirectly by disease, there can be no recovery if pre-existing disease contributed to the death. *Weiner v. Metropolitan Life Insurance Co.*, 416 F.Supp. 551 (E.D.Pa. 1976); *Dunn v. Maryland Casualty Co.*, 339 Pa.Super. 70, 488 A.2d 313 (1985). Therefore, inasmuch as the PAP and the WIP each included both clauses, Mrs. Shiffler may recover only if pre-existing disease did not *contribute* to Mr. Shiffler's death.

■ In support of their contention that Mr. Shiffler's death was caused at least in part by pre-existing heart disease, Equitable and the Westinghouse defendants submitted Mrs. Shiffler's answers to interrogatories, the "Supplemental Agreement" signed by Mrs. Shiffler in the workmen's compensation proceeding and Mr. Shiffler's death certificate, which states as

the cause of death cardiac arrest due to myocardial infarction due to arteriosclerotic heart disease and mild hypertension. The supplemental agreement was similar to the death certificate as it acknowledged that the cause of death was cardiac arrest, myocardial infarction and arteriosclerotic heart disease. The answers to the interrogatories showed that Mr. Shiffler had a heart condition before the final attack which contributed to his death. Defendants argue that these documents are more than sufficient to warrant the grant of summary judgment.

Mrs. Shiffler attempted to counter these contentions with a series of medical reports and tests prepared between 1972 and 1978, a period prior to the alleged harassment campaign. She acknowledges that these reports indicate a mildly elevated blood pressure or mild hypertension; however, she suggests that this alone does not "in ordinary speech" constitute a disease. Furthermore, she points to an absence of arteriosclerotic heart disease prior to 1978 and contends that if such disease was present prior to death it was caused by tension created by Westinghouse.

We, like the district court, fail to see how these medical reports enable her to withstand summary judgment on this issue. These reports do not establish that Mr. Shiffler enjoyed freedom from disease prior to the commencement of the alleged harassment program but merely suggest that his disease at that time was not as severe as it was at the time of his death. Clearly, no genuine issue of fact was raised to demonstrate that Equitable was arbitrary and capricious when it determined that Mr. Shiffler's death was caused by disease and thus the claims were barred.

The district court properly granted summary judgment on this issue.[9]

## IV

Because we conclude that no reasonable factfinder could determine under the language of the policies in question that Equitable's denial of benefits to Shiffler was "arbitrary and capricious" we will affirm the district court's order granting summary judgment.

---

9. Mrs. Shiffler asserts that she does not know whether her husband ever received information describing the scope of the coverage. The record shows, however, that Westinghouse widely promoted the plans and distributed information and booklets describing them. In these circumstances we find no genuine issue of fact to suggest that Westinghouse breached its fiduciary duty to provide Mr. Shiffler with an explanation of the plan. *See Allen v. Atlantic Richfield Retirement Plan,* 480 F.Supp. 848 (E.D.

Pa.1979), *aff'd,* 633 F.2d 209 (3d Cir.1980). We also point out that quite aside from the fact that Equitable was not arbitrary and capricious in determining that disease was the cause of death, it is doubtful that the death can be considered to have been the product of "violent, external and accidental means" so that even if Mr. Shiffler had no prior conditions the claims were properly rejected. But in view of our result we need not decide this.