Marilyn **KRIEBEL**, an individual, and Thomas Kriebel, an individual, Plaintiffs,

v.

**PHOENIX MUTUAL LIFE INSURANCE CO.,** Defendant.

**Civ. A. No. 85-2194.**

United States District Court, W.D. Pennsylvania.

Nov. 22, 1988.

---

licensed to transact insurance business in the Commonwealth of Pennsylvania.

Plaintiffs' Amended Complaint alleges that on September 22, 1981, Mrs. Kriebel was injured while riding on a trolley. As a result of the accident, Mrs. Kriebel was disabled and has remained disabled. In September, 1981, Mrs. Kriebel was employed by Blue Cross of Western Pennsylvania. She maintained a Long Term Disability Plan (the "Plan") with defendant through Blue Cross.

The ultimate issue to be resolved in this action is the liability of the defendant to the plaintiffs under that policy.

Counts 1 and 2 of Plaintiffs' Amended Complaint seek damages and other relief on the basis of Pennsylvania contract law (pled as an assumpsit form of action). The plaintiffs contend that defendant made disability payments to Mrs. Kriebel from March 29, 1982, to February 28, 1985 and after that date wrongfully withheld benefit payments that are due under the policy. In Count 2, Mr. Kriebel makes a claim (in assumpsit), for reimbursement of expenses he incurred as a result of Mrs. Kriebel's disability.

Richard Wentley, Reed, Smith, Shaw & McClay, Pittsburgh, for defendant.

Louis Tarasi, Tarasi & Johnson, Pittsburgh, for plaintiffs.

### MEMORANDUM ORDER

COHILL, Chief Judge.

Presently before us is defendant's Renewed Motion for Judgment on the Pleadings and Renewed Motion to Strike Jury Demand. For the reasons stated below, we will grant the Renewed Motion for Judgment on the Pleadings and will deny the Renewed Motion to Strike Jury Demand.

We note that the parties have filed numerous amendments to their original pleadings; as of the date of this Memorandum Order, the controlling pleadings are Plaintiffs' Amended Complaint, filed May 16, 1988, and Defendant's Answer, filed August 29, 1988.

### I. BACKGROUND

The plaintiffs, Marilyn and Thomas Kriebel, reside in Finleyville, Pennsylvania. The defendant Phoenix Mutual Life Insurance Company is a Connecticut corporation,

Count 3 is a claim for relief under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* Plaintiffs allege that defendant was the plan administrator for the Plan. They contend that defendant's decision to terminate Mrs. Kriebel's benefits was not supported by substantial evidence and was arbitrary and capricious.

### II. ANALYSIS

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, any party may move for a judgment on the pleadings. A Rule 12(c) motion provides a means to dispose of cases, or issues therein, when material facts are not in dispute and a question of law can be resolved by focusing solely on the contents of the pleadings. C. Wright & A. Miller, 5 *Federal Practice & Procedure* § 1367, at 685.

In considering a motion for judgment on the pleadings, the court must view the facts presented and the inferences drawn

therefrom in the light most favorable to the nonmoving party. All of the factual allegations in the nonmovant's pleadings are assumed to be true, and all contravening assertions in the movant's pleadings are taken to be false. *Id.* at 690–91; *Chuy v. National Football League Player's Ass'n,* 495 F.Supp. 137, 138 (E.D.Pa.1980).

Under Rule 12(h)(2) of the F.R.C.P., a defense of failure to state a claim upon which relief can be granted may be raised in a motion for judgment on the pleadings.

In its Renewed Motion for Judgment on the Pleadings, defendant argues that the plaintiffs have failed to state a claim upon which relief can be granted with respect to Counts 1 and 2 of plaintiffs' Amended Complaint on the grounds that these Pennsylvania contract law counts are pre-empted by ERISA.

The parties agree that ERISA principles govern administration of the Plan; the Plan is an "employee benefit plan" as defined in section 3(3) of ERISA, 29 U.S.C. § 1002(3). The parties disagree, however, as to whether ERISA pre-empts plaintiffs' contract claims.

Section 514(a) of ERISA governs the application of ERISA with respect to other laws. That section, the "pre-emption clause", provides;

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter *shall supersede any and all State laws* insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a) (emphasis supplied).

"State law" includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

Section 514(b)(2)(A) provides one of numerous exceptions to the pre-emption clause; this exception is the only one that appears potentially applicable to this case. This "savings clause" section provides that except as provided in section 514(b)(2)(B),

"nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S. C. § 1144(b)(2)(A).

Section 514(b)(2)(B) restricts the effect of the savings clause by prohibiting state law otherwise saved under Section 514(b)(2)(A) from "deeming" an employee benefit plan an entity subject to the savings clause. This "deeming clause" provides:

> [A]n employee benefit plan described in section 1003(a) of this title ... shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B).

Thus, in sum, if a state law relates to an employee benefit plan that law is pre-empted and ERISA controls. The savings clause excepts from pre-emption laws that regulate insurance, banking and securities. The deemer clause makes clear that a state law purporting to regulate insurance cannot deem an employee benefits plan an insurance company.

The United States Supreme Court recently addressed the issue of whether state common law tort and contract causes of action based upon the improper processing of a claim for benefits under ERISA-regulated benefit plans were pre-empted by Section 514(a) of ERISA. *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). In that case, the plaintiff's employer had a long term disability benefit plan with the defendant insurance company. The plaintiff was injured in an accident, and the defendant initially determined that plaintiff was entitled to benefits. Two years later, the defendant ceased providing benefits. *Id.* 107 S.Ct. at 1551.

The plaintiff in *Pilot Life* based his claim for improper processing on tortious breach of contract and bad faith. The Court initially held that both causes of action un-

doubtedly "related to" the employee benefit plan in that they had a connection or reference to the plan. *Id.* at 1553. They therefore fell under the pre-emption clause of section 514(a). *Id.*

The Court then considered whether Mississippi bad faith law was saved from pre-emption under section 514(b)(2)(A) because it "regulated insurance"; the plaintiff did not argue that tortious breach of contract was also saved.

Applying the bad faith law to the "regulates insurance" savings clause, the Court set forth a two-stage analysis. First, the Court recommended a "common sense" view of the language of the savings clause itself. *Id.* Second, the Court recommended undertaking an analysis of the case law interpreting the phrase "business of insurance" used in the McCarran–Ferguson Act, 15 U.S.C. § 1011, *et seq.*, in determining whether bad faith law "regulates insurance." That Act provides that the "business of insurance" is subject to state regulation. 15 U.S.C. § 1012(a).

The criteria the Court used to determine whether a given state law falls within the "business of insurance" test are (1) whether the law has the effect of transferring or spreading a policyholder's risk, (2) whether the law is an integral part of the policy relationship between the insurer and the insured, and (3) whether the law is applied only to entities within the insurance industry. *Id.* at 1553–54 (adapting from *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982).

Applying this analysis to the plaintiff's bad faith claim, the Court held that Mississippi bad faith law was not a state law that "regulates insurance." The Court initially noted, in applying the "common sense" prong, that the word "regulates" would lead to the conclusion that a law must not just have an impact on the insurance industry, "but must be specifically directed toward that industry" *Id.* 107 S.Ct. at 1554. The law of bad faith, while identified with the insurance industry, is rooted in general principles of Mississippi tort and contract law. *Id.* Thus, the Court held that the

"common sense" understanding of the phrase "regulates insurance" did not support the argument that the Mississippi law of bad faith fell within the savings clause. *Id.*

The Court also concluded that the "business of insurance" analysis did not support the assertion that the Mississippi law of bad faith "regulates insurance." The law on bad faith does not effect a spreading of policyholder risk, does not define the terms of the relationship between the insurer and the insured, and developed from general principles of tort and contract law available in any breach of contract case. *Id.* at 1555.

Combining this analysis, with the strong and clear congressional intent that the civil enforcement provisions of ERISA are to be the exclusive vehicle for actions by ERISA-plan participants asserting claims of improper processing, the Court concluded that the plaintiff's bad faith claim was not saved by Section 514(b)(2)(A) and therefore remained pre-empted. *See Id.* at 1555–58 (extensive discussion of congressional intent).

Applying the principles enunciated in *Pilot Life* to this case, we find that plaintiff's contract claims are pre-empted by ERISA under Section 514(a). This premption clause provides that ERISA supercedes all state laws, decisions, rules, and regulations as they *relate to* the Plan at issue here. The plaintiffs' ultimate goal is to recover proceeds allegedly due under the Plan; plaintiff cannot apply Pennsylvania contract law to this dispute without reference to the specific provisions of the Plan. The claims must necessarily be framed and adjudicated with reference to the Plan.

We therefore hold that plaintiff's Pennsylvania contract claims fall within the preemption clause. *See Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) (plaintiff's common law contract and tort claims to recover allegedly wrongfully terminated disability benefits were pre-empted by ERISA because related to an employee benefit plan); *Shiffler v. The Equitable Life Assurance Society of the United States*, 838 F.2d 78, 81–82 (3rd Cir.1988)

(plaintiff's state law claims, including breach of contract, for recovery of benefits under employee benefits plan were pre-empted by ERISA under the expansive "related to" analysis).

We must now consider whether plaintiff's pre-empted contract claims are saved from pre-emption because Pennsylvania contract law "regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).

Plaintiff argues that Pennsylvania contract law "regulates insurance" and in applying the *Pilot Life* tests argues that the savings clause applies in that (1) Pennsylvania case law construing insurance policies is regulation specifically directed toward the insurance industry, (2) the business of providing disability insurance involves risk taking, (3) the requisite relationship between insured and insurer is met here because defendant made benefits termination decision, and (4) the defendant is engaged in the business of insurance.

We believe that the plaintiff has misread both prongs of the *Pilot Life* section 514(b)(2)(A) savings analysis.

First, under the "common sense" prong, the word "regulates" implies that the state law sought to be applied must just not have an impact on the insurance industry but must be specifically directed toward that industry. While it is true that decisional law that "regulates insurance" would come within the savings clause, we find it extremely difficult to conclude that Pennsylvania contract law per se is specifically directed toward the insurance industry; it is merely common law of general application. Admittedly, Pennsylvania contract law may be used to resolve insurance-related contract disputes; further, the manner in which Pennsylvania state judges interpret and apply the common law of contracts clearly impacts on the insurance industry. However, Pennsylvania contract law does not "regulate insurance" from a common sense reading of that phrase.

Second, the McCarren–Ferguson "business of insurance" factors are to be considered with respect to the state law that is pre-empted; not with respect to the business of the particular defendant. In accordance with *Pilot Life*, the issue here is whether Pennsylvania contract law effects a spreading of policyholder risk, defines the terms of the relationship between the insurer and the insured, and is exclusively directed toward the insurance industry. Plaintiff entirely fails to address this issue.

We find that the McCarran–Ferguson factors do not support the assertion that Pennsylvania contract law "regulates insurance." Pennsylvania contract law does not effect a spreading of policyholder risk, does not define the terms of the relationship between the insurer and the insured, and is not exclusively available to those in the insurance industry. It is nothing more than principles of general application that are available in any breach of contract case and that may be used by an insurer and insured to define the terms of their relationship.

Applying both the "common sense" prong and the McCarran–Ferguson factors prong to determine whether Pennsylvania contract law "regulates insurance", we conclude that it does not. In furtherance of congressional intent that ERISA provide uniform regulation of employee benefit plans, we hold that the savings clause provided in section 514(b)(2)(A) does not save plaintiff's contract claims from pre-emption. We will therefore grant defendant's Renewed Motion for Judgment on the Pleadings with respect to Counts 1 and 2 of plaintiff's Amended Complaint.

In light of our conclusions above, plaintiff's failure to demand a jury trial with respect to Count 3 of the Amended Complaint, and plaintiff's later consession that such failure was intentional, *See* Plaintiff's Brief in Opposition to Judgment on the Pleadings, p. 10, n. 3, we will deny defendant's Renewed Motion to Strike Jury Demand as moot.

AND NOW, to wit, this 22nd day of November, 1988, for the foregoing reasons, it is ORDERED, ADJUDGED, and DECREED that;

1) defendant's Renewed Motion for Judgment on the Pleadings be and hereby is GRANTED,

2) Counts 1 and 2 of plaintiff's Amended Complaint be and hereby are DISMISSED,

3) defendant's Renewed Motion to Strike Jury Demand be and hereby is DENIED.