Audrey Ann **ALLISON** aka
**Mrs. Willard Allison**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY,**

**Audrey Ann Allison, a/k/a Mrs. Willard Allison, Appellant.**

No. 91–3579.

United States Court of Appeals, Third Circuit.

Argued March 5, 1992.

Decided May 21, 1992.

Kris A. Vanderman (argued), Charleroi, Pa., for appellant.

---

* As to panel rehearing only.

Daniel J. Weis (argued), Weis & Weis, Pittsburgh, Pa., for appellee.

Before: STAPLETON and MANSMANN, Circuit Judges, and POLLAK, District Judge.*

OPINION OF THE COURT

MANSMANN, Circuit Judge.

This appeal raises a discrete question under Pennsylvania law regarding the interpretation of an exculpatory clause in a limited travel accident insurance policy. We are asked to determine whether that clause relieved the insurer of liability for the insured's death since her death was due, at least in part, to a pre-existing disease. Because we find that the district court erred in its interpretation of the insurance policy's language, we will reverse the district court's grant of summary judgment in favor of the insurer, and we will remand for entry of summary judgment in favor of the beneficiary.

I.

The appellant, Audrey Ann Allison, is the named beneficiary to an insurance policy purchased by Martha B. Frances ("insured") from the appellee, Nationwide Insurance Company for coverage during a cruise operated by Carnival Cruise Lines, Inc. Ms. Frances boarded the cruise ship on June 5, 1986. On the next day, June 6, 1986, she fell in the bathroom of her cabin, breaking her right hip. She immediately was taken from the ship to Ormand Memorial Hospital in Ormand Beach, Florida where the medical staff determined that surgery was necessary to repair her hip. Surgery was performed on June 9, 1986. During surgery, Ms. Frances suffered a fatal cardiac arrest. The cause of death listed on the death certificate was "terminal cardiac arrest due to or as a conse-

quence of arteriosclerotic cardiovascular disease due to or as a consequence of previous myocardial infarction."

Allison requested payment of the $75,000 accidental death benefit under the policy. When Nationwide refused to pay, she instituted this action.[1]

At the pre-trial conference, the district court determined, on stipulation of the parties, that there were no genuine issues as to any material fact. Because the case turned on the legal question of coverage under the terms of the policy as drafted, the case was ripe for summary judgment.[2]

The parties' dispute involved two sections of the insurance policy, the preamble and Part I. The policy's preamble states as follows:

"Injury" as used in the Master Policy means an accidental bodily injury occurring anywhere in the world which arises solely from accident, is not contributed to by sickness, disease, or bodily or mental infirmity, and is sustained by an insured member while:

SECTION A—riding as a fare-paying passenger, but not as an operator or member of a crew, in or on any bus, train, subway, streetcar, taxi-cab, power boat or ocean liner operated under a license for the transportation of passengers for hire; or . . .

SECTION B—[coverage for airline passengers]; or

SECTION C—[coverage for auto operators, passengers, and pedestrians].

The insurance evidenced by this Certificate provides LIMITED TRAVEL ACCIDENT insurance only. It does NOT provide basic hospital, basic medical or major medical insurance as defined by the New York State Insurance Department.

The insurance policy preamble is followed by Part I of the policy, entitled "Accidental Death, Dismemberment and Loss

---

* Honorable Louis H. Pollak of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. Suit was commenced in a Pennsylvania state court. On Nationwide's motion, the action was removed to the United States District Court for the Western District of Pennsylvania on the basis of diversity of citizenship.

2. The parties' cross-motions for summary judgment were referred to a Magistrate Judge for a

report and recommendation. The Magistrate Judge filed a report and recommendation in favor of summary judgment for Nationwide. The district court adopted the Magistrate Judge's Report as the opinion of the court and issued a final order in favor of Nationwide. All references to the district court's opinion are therefore to the report of the Magistrate Judge.

of Sight Indemnity Benefit." Part I states in relevant part:

> If Injury shall result in any of the following specific losses within 180 days after the date of the accident, the Company will pay the amount set opposite the loss in the appropriate column for the Insured Member's current membership.
>
> .    .    .    .    .

Part I provides for a $75,000.00 benefit in the event of loss of life.[3]

The district court read these provisions of the policy in a manner substituting the word "death" for "injury" as follows:

> "Injury" as used in the Master Policy means an accidental bodily injury (here death) occurring anywhere in the world which arises solely from accident, [and] is not contributed to by sickness, disease, or bodily or mental infirmity ...

The district court noted that the policy contained two exclusionary clauses: that the injury (1) "arises solely from accident," and (2) "is not contributed to by sickness, disease, or bodily or mental infirmity." Relying on two Pennsylvania Superior Court decisions,[4] the district court held that Allison was required to show that the insured's death was caused solely by accident. Since Allison conceded that the insured's death was in part caused by a bodily infirmity (arteriosclerosis), the district court determined as a matter of law that the insured's death was not covered by the policy and granted summary judgment in favor of Nationwide.

Our jurisdiction in this appeal from a final order of the district court derives from 28 U.S.C. § 1291. Our review of the district court's interpretation of an unambiguous insurance policy is plenary. *Ram Construction Co., Inc. v. American States Ins.*, 749 F.2d 1049, 1053 (3d Cir.1984).

## II.

Allison contends on appeal that the district court erred in finding that the insured's death was an "injury" as defined in the preamble of the insurance policy rather than a "loss resulting from injury" under Part I of the policy. Indeed, Allison argues, when the insured's death is properly categorized as a "loss resulting from injury," the death benefit is not barred by the language of the policy permitting recovery only for injuries which are accidental and not contributed to by disease. Therefore, Allison concludes, the district court was incorrect in treating "death" as an "injury" because the policy itself treats "death" as a "loss."[5]

An analysis of whether the insured's death was an "injury" or a "loss resulting from injury" is necessary in order to determine which of the policy's exclusions apply assuming, *arguendo*, that the policy does place separate exclusions on the two terms. In substituting the word "death" for the word "injury" within the preamble of the policy, the district court failed to analyze whether the insured's death was properly categorized as an "injury" or was instead a "loss resulting from injury" under the other terms of the policy.

█ A plain reading of the insurance policy lends credence to Allison's argument. Under the interpretation of the poli-

---

**3.** Part II of the policy provides for a hospital benefit for injuries resulting in a hospital stay. Part III defines eligible members of the group policy. Part IV provides for termination of coverage in certain circumstances. Under Part V of the policy, losses are excluded from coverage if the insured commits or makes an attempt at suicide or participates in the military during wartime. Parts II through V of the policy are not involved in this dispute.

**4.** *See Dunn v. Maryland Casualty Co.*, 339 Pa.Super. 70, 488 A.2d 313 (1985) (where there are two exclusionary clauses limiting liability, the insured must show that no outside factors contributed to injury or death) and *Johnson v. Ken-*

*tucky Central Life & Accident Ins. Co.*, 144 Pa.Super. 116, 18 A.2d 507 (1941) (death of insured must be result of accident and not other indirect means).

**5.** Alternatively, Allison argues that the language of the policy, specifically whether the exclusions extend to a death resulting from injury, is ambiguous and that these ambiguous terms should be resolved in favor of the insured under Pennsylvania law. *Beley v. Pennsylvania Mutual*, 373 Pa. 231, 95 A.2d 202, 205 (1953), *cert. denied*, 346 U.S. 820, 74 S.Ct. 34, 98 L.Ed. 346 (1953). Due to our disposition of this case on other grounds, we do not reach the merits of this contention.

cy proposed by Allison, the "injury" in this case is the insured's broken hip. Since this injury was accidental, was not contributed to by disease or sickness, and occurred while the insured was riding as a passenger on an ocean liner, it meets the definitional requirements of an "injury" in the policy. Proceeding next to Part I of the policy, we conclude that the insured's death was a "loss resulting from injury" because the insured's death occurred within 180 days of the injury, was a result of the injury,[6] and recovery was not barred by the exclusionary provisions of Part V of the policy, relating to losses.[7] Consequently, the $75,000 death benefit should have been paid under the clear language of the policy.

If the insured's "death" were to be read as an "injury" as Nationwide proposes and as the district court read it, it does not fall within the definitional requirement of "injury" as enunciated in the policy because the death did not occur while the insured was a passenger on an ocean liner.[8] Nationwide's interpretation of the policy would exclude coverage for *any* on-board injury leading to an off-board death, even if the injury was the sole cause of the death. Under the construction of the policy favored by Nationwide, therefore, only deaths which occurred on board the ocean liner would be covered.

Nationwide's interpretation also renders the 180 day limitation on losses resulting from injury[9] problematic, since it is doubtful an injured and dying passenger would

be left on board an ocean liner for over six months. It seems manifest, therefore, that a death resulting from injury was intended to be a "loss resulting from injury" under the policy, and that the district court's interpretation of the policy was incorrect as a matter of law.

### III.

■ Although the correct interpretation of the policy is clearly that the insured's death in this case is a "loss resulting from injury", Nationwide would still be entitled to summary judgment if the exclusions upon injuries also extended to "losses resulting from injury." If, as Nationwide argues, the Pennsylvania Superior Court decision in *Dunn v. Maryland Casualty Co.*, 339 Pa.Super. 70, 488 A.2d 313 (1985), stands for the proposition that two exclusionary provisions place an absolute limit on the insurer's liability whether the exclusions modify the term "injury", "loss", or "death", then Allison still would not be entitled to the death benefit. We do not believe that *Dunn* compels this result. Indeed, the policy itself does not give any indication that the exclusions were meant to be this far-reaching.

The parties have not suggested Pennsylvania cases which expressly or impliedly hold that exclusionary terms in an insurance policy modifying injury, loss or death also extend to limit liability for other consequences.[10] We held in *Shiffler v. Eq-*

6. Nationwide has stipulated that the insured would not have died but for the surgery.

7. Part V of the policy reads as follows:
   EXCLUSIONS
   No payment shall be made for loss caused by or resulting directly or indirectly from:
   (1) Suicide or any attempt thereat; or
   (2) War or any act of war (declared or undeclared), or participation in military, air or naval service in time of war....

8. This requirement is contained in Section A of the policy.

9. This restriction is contained in Part I of the policy.

10. The primary Pennsylvania Supreme Court case on the issue also involved a clause which expressly excluded liability for loss, injury and death. The policy in question excluded coverage for:

accident, injury, disability, death or any other loss caused wholly or partly, directly or indirectly, by disease or bodily and mental infirmity....
*Rodia v. Metropolitan Life Ins. Co.*, 354 Pa. 313, 47 A.2d 152, 153 (1946).
Cases decided by the Pennsylvania Superior Court and by federal district courts applying Pennsylvania law which also involved clauses expressly limiting liability for *death* or *loss: Weiner v. Metropolitan Life Ins. Co.*, 416 F.Supp. 551, 552 (E.D.Pa.1976) (benefits not payable "if the Insured's death ... is caused or contributed to, directly or indirectly, by disease or bodily or mental infirmity"); and *Stewart v. Prudential Ins. Co. of America*, 147 Pa.Super. 296, 24 A.2d 83, 84 (1942) ("[No] additional benefit shall be payable if such death resulted ... (f) directly or indirectly from bodily or mental infirmity or disease in any form").
Finally, neither of the two cases cited by the district court dealt with policy language solely

*uitable Life Assur.*, 838 F.2d 78 (3d Cir. 1988), that a death benefit was not payable where the insured's death was due in part to a disease and the insurance policy provided:

> Benefits will be paid for bodily injury caused solely through violent, external and accidental means which results in death.... Benefits are paid provided that the death ... is not caused directly or indirectly by disease....

*Shiffler*, 838 F.2d at 84. *Shiffler* is therefore distinguishable from this case because the exclusionary clause expressly limited the insured's liability for "death," whereas Nationwide's liability here is only expressly limited for "injury."

Our conclusion that the exclusions of the insurer's liability for injuries do not extend to limit liability for losses resulting from injury is further supported by the fact that the Nationwide policy places separate and distinct exclusions upon losses resulting from injury in Part V of the policy. These specified exclusions do not claim to be in addition to, or supplemental to, any other exclusions upon loss resulting from injury. Had Nationwide included a clause limiting liability for loss caused by sickness, disease, or bodily or mental infirmity in Part V, then *Shiffler* and *Dunn* would clearly bar recovery in this case. In the absence of such a clause, we are hesitant to apply the exclusion beyond its stated meaning.

## IV.

It is clear, based on a fair reading of the exclusionary language of the contract under Pennsylvania law, that the provisions of the policy restricting the insurer's liability for injuries do not extend to losses resulting from injuries. Thus we hold that the district court erred as a matter of law in its interpretation of the policy.

modifying the term "injury". *Johnson v. Kentucky Central Life & Accident Ins. Co.*, 144 Pa.Super. 116, 18 A.2d 507, 508 (1941) (benefits payable in the event of "death of the insured, resulting directly or independently of all other causes through external violent and accidental means"); *Dunn v. Maryland Casualty Co.*, 339

We will reverse the summary judgment granted in favor of Nationwide and remand this matter with instructions that the district court enter summary judgment in favor of the plaintiff, Audrey Ann Allison.

Pa.Super. 70, 488 A.2d 313, 314 (1985) (accidental death benefit was specifically excluded where death was "caused or contributed to by ... [s]ickness or disease or bacterial infections").